LUCKEY *v.* LASALLE STEEL COMPANY.

[No. 17,128.   Filed October 12, 1943.]

*Joseph A. Meade,* of East Chicago, for appellant.

*George C. Forrey III,* and *White, Wright & Boleman,* all of Indianapolis, for appellee.

CRUMPACKER, P. J.—This is an appeal from an award of the full Industrial Board of Indiana wherein the appellant was denied compensation for the death of her husband alleged to have resulted from accidental injury arising out of the course of his employment by the appellee. The finding and award of which complaint is made is as follows:

> "Said Full Industrial Board, having heard the argument of counsel and having reviewed all of the evidence in said cause, and being duly advised in the premises, now finds: that on the 18th day of April, 1942 the plaintiff's decedent was in the employ of the defendant at a weekly wage of $30.00 that on the 18th day of April, 1942, the plaintiff's

decedent died and that the defendant had knowledge of said plaintiff's decedent's death; that said plaintiff, Mabel Luckey, was the wife of the deceased, Robert Luckey; that at the time of his said death, the said Robert Luckey, deceased, left surviving him as all and his only dependents, the said plaintiff, Mabel Luckey, age fifty-two years; and his daughter, Shirley May Luckey, age thirteen years that prior to the filing of plaintiff's application, a good-faith effort was made by said parties to adjust said claim, which effort resulted in a disagreement between the parties.

"Said Full Industrial Board now finds for the defendant and against the plaintiff on all the other material allegations alleged in said plaintiff's application Form 10 for the adjustment of a claim for compensation, filed on the 3rd day of August, 1942.

## "AWARD

"IT IS, THEREFORE CONSIDERED, ORDERED AND ADJUDGED, by the Industrial Board of Indiana, that the plaintiff shall take nothing by her application Form 10 for the adjustment of a claim for compensation, filed on the 3rd day of August, 1942, and that she shall pay the costs of this proceeding."

By her assignment of errors the appellant asserts that the above finding and award is "contrary to the law and evidence given in said cause," and in support thereof her sole contention is that the evidence in the case is of such a conclusive character as to force a decision contrary to that reached by the Industrial Board.

From the briefs of counsel and the record we conclude the facts to be substantially as follows: The appellant is the widow of one Robert Luckey who, at the time of his death on the 18th day of April, 1942, at the age of fifty-one years, had been in the continuous employment of the appellee since May 8, 1922. About five years before he died a physical examination made

by the appellee disclosed that he had a systolic count of 170 indicating hypertension or high blood pressure. His employment was continued however and since October, 1927, he had received no medical treatment of any kind. Slight colds had kept him from work for short periods of time on two occasions since 1927 but no doctor was called to treat these indispositions, and during the last six months of his life he had felt exceptionally well and in better spirits than at any time since his marriage to the appellant in 1926. At the time of his death and for sometime prior thereto he had been and was employed by the appellee as an assistant to the master mechanic and his duties required him to repair and keep in working order the various machines used by the appellee in its business. Feeling unusually well the appellant's decedent came to work at about 7 o'clock on the morning of April 18, 1942, and was immediately directed by the master mechanic to repair a machine known as a draw bench which had become out of order sometime during its use by the preceding night shift. This draw bench was operated by means of a pedal or trip lever which was counterweighted in such a manner as to make its normal operation easy but on this occasion the counterweights were so bound or stuck as to impair the free operation of the machine, and in his endeavor to repair it the appellant's decedent rode the pedal up and down five or six times during a period of 25 or 30 minutes. That is to say he put his right foot on the pedal, which was about 18 inches above the floor, and then raised himself, thereby putting pressure or weight on the pedal in order to force it to the floor. As the result of this exertion he became exasperated mentally and heated bodily to the extent that perspiration ran down his face. This however is disputed by testimony that

nothing unusual or out of the ordinary took place while said decedent was working on the machine and when he left it he looked perfectly normal and walked away in a normal manner. The repair job was completed at about 7:30 a. m. and there is no evidence as to what he did or in what work he engaged thereafter until approximately 9:00 a. m. when he was seen walking along an aisle between two rows of machines carrying a small iron bar about two feet in length and weighing a very few pounds. While so walking he fell to the floor and when reached by nearby workmen he was unconscious. He died later in the day of cerebral hemorrhage brought about by hypertension or high blood pressure. There is evidence in the record that at the place where the decedent fell, or thereabouts, the floor is usually slippery from soapy water that runs over and off of tools used in cutting steel and iron and that he "kind of slipped and lost his balance a little and when he turned about he took about a couple steps more" and fell. In dispute of this there is testimony that at the place where the decedent went down the floor was not wet and there was no soapy water thereon nor were there other objects lying about over which, it might be inferred, he tripped or stumbled. There is no evidence of blood on or about his head or body nor is there any evidence of objective symptoms indicating injury resulting from the fall. There is uncontradicted expert testimony in the record that with a man having a systolic count of 170 a little overexertion might produce a cerebral hemorrhage within an hour or two after such exertion, or that slipping and falling suddenly might produce such a result. At the time of his death the decedent's average weekly wage was more than $30.00.

On this evidence the appellant asks us to hold that

the award denying compensation is erroneous on the theory that reasonable men must inevitably conclude therefrom that her decedent met with an accident in the course of his employment and that such accident produced an injury from which he died. It has long been established law that this court cannot weigh the evidence and will not disturb an order of the Industrial Board if there is any competent evidence to sustain it. *Gardner* v. *William Mettler, Inc.* (1938), 106 Ind. App. 55, 17 N. E. (2d) 850. In deciding the question presented we must disregard all evidence unfavorable to the board's decision and consider only such as is favorable thereto together with those inferences as are reasonably deducible therefrom. *Morgan* v. *United Taxi Co., Inc.* (1938), 105 Ind. App. 340, 14 N. E. (2d) 736; *Finkley* v. *Eugene Saenger Tailoring Shop* (1935), 100 Ind. App. 549, 196 N. E. 536; *Knoth* v. *Phillips* (1935), 101 Ind. App. 40, 198 N. E. 110.

Bearing in mind that an injury by accident arising out of and in the course of the decedent's employment is vitally essential to the appellee's case (*Muncie Foundry, etc., Co.* v. *Thompson* (1919), 70 Ind. App. 157, 123 N. E. 196; *Matlon* v. *Matlon* (1931), 92 Ind. App. 350, 175 N. E. 369; *Livers* v. *Graham Glass Co.* (1932), 95 Ind. App. 358, 177 N. E. 359), the first question that presents itself is—what was the accident resulting in the cerebral hemorrhage that caused the decedent's death? His fall to the floor must be eliminated from our consideration because there is no direct evidence as to whether said fall was due to the hemorrhage or the hemorrhage due to the fall and the reasonable inferences to be drawn from the evidence in reference thereto are in conflict. It might be inferred that over exertion in repairing the draw

bench brought on the cerebral hemorrhage which in turn caused the fall. On the other hand, it might reasonably be inferred that the decedent slipped on the soapy floor and fell thereby causing the cerebral hemorrhage which resulted in his death. That the floor was slippery or that there was anything thereon over which he might have stumbled is in dispute. From its decision it is apparent that the Industrial Board found that the hemorrhage occurred first and caused the fall and such finding, being supported by reasonable inferences drawn from the evidence, cannot be disturbed. Assuming without deciding that overexertion in the performance of an employee's usual duties is an accident within the meaning of the Workmen's Compensation Act, we are again confronted with conflict in the evidence. A witness Edgar Williams testified that he was working on machine No. 6 while the decedent was engaged in repairing machine No. 5. That the repairing took 20 or 30 minutes during which time the decedent "rode" the pedal up and down five or six times after which he didn't observe anything unusual about him or anything "different than before he started," and that nothing out of the ordinary took place while he worked thereon. In dispute of this there is evidence that the decedent became angry and sweaty from his exertion which, in a man suffering with high blood pressure, might cause a cerebral hemorrhage. It was within the exclusive province of the Industrial Board to choose between this conflicting evidence, and its finding of the facts in respect thereto is binding upon this court. It will be noted that the Industrial Board failed to find that the appellant's decedent met with an accident or untoward event in the course of his employment which resulted in injury that caused his death and as the appellant had the burden of establishing such facts, the

failure of the Industrial Board to so find is the equivalent of a finding to the contrary. *Alexandria Metal Products Co.* v. *Newsome* (1933), 97 Ind. App. 420, 185 N. E. 520; *Bakers Consulting Bureau* v. *Julian* (1937), 103 Ind. App. 218, 6 N. E. (2d) 737.

We cannot say that there is no evidence to support such a finding or that the evidence is so conclusive in its nature that reasonable men must reach a contrary conclusion.

Award affirmed.

Draper, J., not participating.

NOTE.—Reported in 50 N. E. (2d) 883.