KRAFT *v.* HIMSEL STOCK YARDS.

[No. 18,854.  Filed January 22, 1957.  Rehearing
denied March 6, 1957.]

*Russell S. Armstrong,* of Evansville, for appellant.

*Ortmeyer, Bamberger, Ortmeyer & Foreman,* of Evansville, for appellee.

BOWEN, C. J.—This is an application for review of an award of the Full Industrial Board.

The appellant's Form 9 application for compensation prayed an award of compensation for an alleged acci-

dental injury which the appellant claims arose out of and in the course of his employment by the appellee Stock Yards company, by reason of his being shoved, pushed, and stepped on by hogs, and developing therefrom a blood clot in his right foot necessitating the amputation of his right leg above the knee. The Hearing Member entered his order finding that the appellant did not sustain an accidental injury in the course of his employment, and upon a petition for review before the Full Industrial Board the Full Board determined that appellant did not sustain an accidental injury arising out of and in the course of his employment. On the basis of such finding the Full Industrial Board made an award that appellant take nothing on his Form 9 application for compensation.

Error assigned for reversal is that the award of the Full Industrial Board is contrary to law.

The sole question for our determination, therefore, is whether the evidence submitted to the Board leads inescapably to a conclusion contrary to that reached by the Board. If it does not then the award must be affirmed. *Wilson* v. *Indiana Gas & Water Company* (1955), 126 Ind. App. 302, 130 N. E. 2d 498.

From the facts in the record before us most favorable to appellee it appears that appellant, who was 74 years of age, was a helper at the stockyards operated by appellee. That the appellant was a patient of one Dr. Charles Klamer, a physician and surgeon. That said doctor was called to the appellant's home to treat him for a painful right leg. That at the time he was in bed, and stated that his leg had been hurting him for two or three days. The appellant's leg was red and inflamed and moderately edematous, and showed signs and symptoms of a circulatory disorder. Dr. Klamer had treated the appellant for a vascular heart disease associated with arteriosclerosis for several years, and appellant suffered from auricular

fibrillation for some five or six years, a condition which results in frequent plural thrombi being formed that sometimes break off and go to various parts of the body in the arterial circulation. The appellant related a history of pain in his right leg for which such doctor prescribed an analgesic for some supportive treatment of his heart. The appellant suffered mild congestive heart failure at the time and soaks were made with packs for his heart. Dr. Klamer testified that his diagnosis at the time he first examined appellant was embolism, popliteal artery of the right calf. The appellant was hospitalized some thirty days thereafter, and the doctor continued the previous treatment that he had been prescribing prior to appellant's hospitalization, and also put him on antibiotics. His condition degenerated and he had severe pain of his entire right foot and leg up to the knee. Such doctor determined that it was necessary to amputate his leg. The leg was gangrenous before it was amputated and the blood vessels were sclerosed and clotted. Dr. Klamer testified that arteriosclerosis and auricular fibrillation are connected more frequently with age, and that appellant had predisposing factors for these conditions. That such condition can occur at any time when the individual is either moving about or at rest. That it does not necessarily depend upon movement, and could occur in sleep or while a person is sitting down or up and about. Dr. Klamer testified he saw no sign of injury and that auricular fibrillation and arteriosclerosis were involved and present. This attending physician further testified that the appellant did not give a history of an injury at any time. That the appellant stated to him while he was working at the Himsel Stock Yards he suffered an acute pain in his right leg and that he had to sit down, but he gave the doctor no history of a hog stepping on him. The doctor testified that there was no question of this man having arteriosclerosis, and having

his leg amputated gave him no history at any time of an accident, and the doctor found no signs of an accidental injury.

Dr. Henry J. Faul, who was called by the appellee, testified in response to hypothetical questions that the condition of which appellant complained was not traumatic in origin. Dr. Faul also testified that if an injury had occurred to appellant's foot or toe it would be most unlikely and improbable that a thrombus would have formed between the knee and ankle of appellant, and that the thrombus occurred by reason of appellant's auricular fibrillation. Dr. Faul also testified that if a trauma was incurred sufficiently severe to cause a clot in the popliteal artery, which lies deep under several layers of muscle, that the injury would have to be severe, and that there would have to be some external evidence of such an injury, including marked discoloration, lacerations, contusions, black and blueness resulting from oozing of blood from damaged blood vessels into tissues of skin, and that if the leg did not turn black until some weeks after the alleged injury, and if there was no evidence of discoloration to the foot or leg two or three days after the injury, that then there was no trauma which caused the condition.

It seems clear from the foregoing testimony that there was substantive evidence of probative value sufficient to have justified the Full Industrial Board in concluding that the appellant did not sustain an accidental injury arising out of his employment with appellee, and that the Board's findings and award thereon is binding upon the Appellate Court. *Luckey* v. *LaSalle Steel Company* (1943), 114 Ind. App. 48, 50 N. E. 2d 883.

This court on an application for a review of an award of the Full Industrial Board is controlled by well estab-

lished rules of procedure declaring that it is the province of the Industrial Board to find the facts, and in determining such ultimate facts such Board may draw any reasonable inferences from the facts proved, and on a review this court must not weigh the evidence nor draw inferences therefrom leading to a different conclusion from that reached by the Industrial Board, unless there is no evidence of probative value which supports the award of the Board under the rules laid down in such cases. *Espy* v. *Indianapolis Power & Light Co.* (1932), 94 Ind. App. 184, 180 N. E. 190.

However, the appellant asserts as the principal error relied on that the Industrial Board erred in admitting into evidence the pathology report of one Dr. Rutherford who did not testify as a witness, and that the reading of said report into evidence constituted reversible error in that it was hearsay evidence, and that the other evidence in the case having no connection with or relation to such pathology report when fully considered is insufficient to sustain the finding and award of the Industrial Board, citing the cases of *McCoy* v. *General Glass Corp.* (1939), 106 Ind. App. 116, 17 N. E. 2d 473, and *Armes* v. *The Pierce Governor Co.* (1951), 121 Ind. App. 566, 101 N. E. 2d 199.

The record made with reference to this specification of error is as follows:

"At the hearing in said cause had before the Honorable Ramon J. Hitch, member of the Industrial Board of Indiana, the following proceedings were had during the direct examination of the appellee's witness Dr. Charles Klamer:

"Q. Was there any indication that this blood clot formed or began in the foot?

"Mr. Armstrong: Object any report not made by the Doctor himself inasmuch as it would be hearsay.

"H. Member: What doctor made that report?

"A. Dr. Rutherford, from St. Mary's Hospital, Evansville.

"H. Member: Overruled, go ahead.

"(To which ruling of the H. Member plaintiff at the time duly excepted.)

"A. Popliteal artery—(Doctor reading too fast to report.)

"During the review of said cause by the full Board, appellant renewed his objection to said evidence, objected to as shown above, as follows, to-wit:

"Mr. Armstrong: Plaintiff objects to the introduction of the pathologist's report, the pathologist being Dr. Rutherford from St. Mary's Hospital, Evansville, for the reason that said report constitutes hearsay evidence; there is no showing that the pathologist was a competent pathologist, and the plaintiff, if said report were admitted into evidence, would be deprived of the right to- of the right of cross-examination as to the matters in said report stated and shown, Dr. Rutherford not having testified as a witness and the report not having been otherwise identified than by the testimony of Dr. Charles Klamer, and said report not having been prepared, or the results thereof arrived at by any of the witnesses testifying at the hearing of this cause. That's all.

"Chairman Miller: We'll take the ruling under advisement.

"And afterwards, to-wit, on the 28th day of February, 1956, the Full Industrial Board made its ruling on the foregoing objection.

"Member Ramon J. Hitch: Have the record show the full Industrial Board overrules plaintiff's objection."

The situation with reference to the pathology report involves an objection made by appellant to a partial answer which was not responsive to the question. ■ The appellant did not move to strike out such alleged objectionable testimony. When improper testimony is volunteered in response to a proper question or when an answer is made which is not responsive

to a question unobjectionable in itself, the proper remedy is to promptly move to strike out the objectionable testimony. *Mueller* v. *Mueller* (1948), 118 Ind. App. 274, 78 N. E. 2d 667; *Jones* v. *State* (1889), 118 Ind. 39, 20 N. E. 634.

The answer to which appellant's objection was addressed, and the pathology report of Dr. Rutherford, the admission of which into evidence is asserted as error, is not in the record, nor has the appellant brought forth the contents of such report in the record to this court, except as the same appears by reference in connection with certain questions asked of the medical witnesses.

It is well settled that one who seeks to overthrow the judgment of the trier of the facts must affirmatively show an erroneous ruling and that it was prejudicial to him, and that a court of appeals will not indulge contrary presumptions to sustain appellant's alleged error. *Grimes et al.* v. *Grimes* (1895), 141 Ind. 480, 40 N. E. 912; *Jennings et al.* v. *Sturdevant* (1894), 140 Ind. 641, 40 N. E. 61; *N. Y. Central Ry. Co.* v. *Milhiser* (1952), 231 Ind. 180, 106 N. E. 2d 453, 108 N. E. 2d 57.

Since neither the pathology report objected to nor its contents are a part of this record, this court is not in a proper position to determine whether such alleged evidence was or was not *per se* incompetent, and the appellant has not presented a question as to the admissibility of such alleged evidence. *Eichel et al.* v. *Bower* (1891), 2 Ind. App. 84, 28 N. E. 192.

Furthermore, there is no showing in the record that Dr. Klamer was not present when the examination was made by the pathologist, nor that Dr. Klamer did not have personal knowledge of the facts set forth in the pathologist's report.

The appellant further asserts that the other evidence in the case having no connection with or relation to such

pathology report when fully considered is insufficient to sustain the finding and award of the Industrial Board.

This position is not tenable in the light of the evidence. Dr. Klamer testified that at the time he examined appellant prior to the amputation and when he was ■ suffering pain, he made a diagnosis of embolism, popliteal artery of the right calf. Thus, the only references in the record to the pathologist's report represented a confirmation of Dr. Klamer's original diagnosis and his expert judgment and opinion throughout the entire course of treatment.

For the reasons given herein, this court is of the opinion that the award of the Full Industrial Board is not contrary to law.

Award affirmed.

NOTE.—Reported in 139 N. E. 2d 569.