WESTFIELD GAS CORPORATION *v.* HILL

[No. 19,075. Filed October 28, 1960. Rehearing denied February 1, 1961. Transfer denied March 10, 1961.]

560

*Campbell, Campbell, Malan & Kyle,* of Noblesville, and *Stewart & Richardson,* of Lebanon, for appellant.

*Parr, Parr & Parr,* of Lebanon, and *Christian, Waltz & Klotz,* of Noblesville, for appellee.

Ax, P. J.—This is an action to recover damages for personal injuries arising out of an explosion which occurred in the basement of a dwelling house in the town of Westfield.

The complaint essentially charged the appellant with having owned, maintained and operated a gas line along the east side of Union Street in the town of Westfield, between the sidewalk and curb, in front of the house owned and occupied by Ella Davis, in which appellee was visiting on November 14, 1953; that said house sat fifty feet east of said curb; that the basement was under the west central part of said house within a distance of sixty feet of said gas line; that said gas mains

and pipes were old and leaky and out of repair and had been in the ground for many years and allowed gas to leak into the cellar and basement of the said house; that appellee struck a match in said cellar and the gas, which appellant had negligently allowed to escape, exploded with great force and badly burned the appellee; also, that appellant made no inspection and did not attempt in any way to determine the condition and fitness of said lines and mains before attempting to transmit gas through same; further, that as a result of the carelessness and negligence of appellant, appellee was injured and suffered damages in the sum of fifteen thousand dollars.

Verdict of the jury and judgment was in favor of the appellee assessing damages in the sum of $4,200.00.

Appellant's sole assignment of error was the overruling of its motion for a new trial.

Appellant's first unwaived cause assigned was that the verdict was not sustained by sufficient evidence and is contrary to law. It supports this contention by arguing that (1) there was no evidence that the explosion causing appellee's injuries was caused by gas of appellant—that it might have been caused by (a) fuel oil by which the house was heated, (b) propane gas which might have leaked from one or both propane gas tanks located immediately outside of the house near the open door leading to the basement where the explosion occurred, or (c) sewer gas seeping into the basement. Appellant further argues that even if the explosion was caused by gas of appellant (a) there was no proof of any negligence on the part of appellant in transmitting gas through mains, (b) that there was no knowledge on the part of appellant of any leak in the gas main near the propery of appellee's host, (c) and that the break in the main transporting the gas might have been

caused by an act of God, or vis major, either by unsettled ground conditions or the contraction of the cast iron pipe caused by the cold weather.

Reviewing the evidence most favorable to appellee pertaining to the above points urged by appellant in its argument that there was insufficient evidence of negligence of appellant, we are confronted with the following: Appellee, a widow approximately eighty-five years of age and dependent on Public Welfare for her subsistence, lived with and helped care for her sister-in-law, who was also a widow approximately the same age as appellee and who was confined to a wheelchair with a broken hip. On November 14, 1953, about noon, appellee descended the basement steps at the home of her sister-in-law, which we will hereafter refer to as the Davis house, to get a can of tomatoes which she found to be spoiled. She flicked on the light switch, and then went back upstairs to get some matches. She then re-entered the basement, bent over to the concrete floor in front of an old safe where the canned goods were located, struck a match on the floor, and an explosion immediately occurred, catching her dress on fire and severely burning her about the legs, hands and face. She remembered nothing at the time except the flash of fire coming up around her. Her dress was still on fire when she ascended the basement steps to the outside of the Davis House and entered the Davis House through the outside door near the basement door.

The Davis House was not supplied by gas furnished by the appellant. It was heated by fuel oil. An apartment, and three rooms above, on the north side of the Davis House in which lived a family by the name of Bauers, was heated by a fuel oil heater which was burning at the time of the explosion. The Bauers cooked with propane gas supplied by a gas company other than

appellant. This propane gas at the time of the explosion was contained in two tanks located outside the Davis house about four or five feet above the ground level and near the basement door which was left open by the appellee at the time of the explosion. Copper tubing ran from these tanks up through the walls to connect with the cookstove in the Bauers apartment. When the explosion occurred neither the oil stove in the Davis House nor the propane gas stove of the Bauers exploded.

When the explosion occurred, appellant was transporting a type of gas known as liquid-petroleum gas maintained in the two-inch gas line at a pressure of approximately a half pound per square inch. This type of gas is not as heavy as propane gas which was also provided to customers of appellant. The gas main of appellant transporting such gas was approximately sixty feet west of the west side of the Davis House running parallel between the curb and sidewalk on the east side of the street in front of the Davis House.

The transporting gas main was a two-inch I.D. cast iron pipe buried approximately twenty-four inches in the ground and above a two-inch cast iron water line. This water line had been installed first and was buried approximately forty-eight inches deep in order to prevent freezing. There was no connecting service line running to the Davis House from this gas main. Although appellant's witness testified that there was an old gas service line running to the Davis House from an old gas line installed about fifty years previously, there was no evidence of where this line was located.

Immediately after the explosion a gas flame approximately fifteen inches high was observed by several witnesses near the center of the house on the north side in an excavated area that had been dug several years pre-

viously in an unexcavated portion of the basement. The excavation was about four or five feet deep and had been made for a new footing for a rebuilt chimney. The appellant was notified immediately of the explosion, and one of its employees came, observed the flame, and started making tests outside the Davis House for gas leaks, finding a leak about forty feet north of the Davis property.

The gas was shut off in the main about an hour after the employee of the gas company had reached the Davis House. The flame in the basement was then about twelve or fifteen inches high, according to one witness for appellee. One hour after the gas was shut off it had diminished an inch. Two hours after the gas was shut off it was about eight inches high. It burned for four hours after the gas was shut off, and there was only a spark of flame when the employee of appellant put it out.

There was disputed testimony as to whether or not the appellant's employee had knowledge of a leak in the gas line near the Davis House a few days prior to the explosion. There was also evidence, although disputed, that immediately after the explosion the odor of gas could be smelled in the Davis basement.

Considering all of this evidence in the bill of exceptions, we are of the opinion that it is reasonable for the jury to infer that the explosion was caused by gas leaking from mains of appellant. We believe that it is reasonable for the jury to infer that the leaking gas was percolating through the ground or through unascertained pipes in the ground from the leak into the basement, particularly in view of the fact that the flame did diminish after the valve in the main gas line was shut off. True, it did not immediately stop as it perhaps would have if the gas had been contained in a line. However, since the liquid-petroleum gas of appellant

was not under high pressure and was very volitionary, meaning it flows freely, as testified to by a witness for appellant, we believe it is reasonable for the jury to infer that this gas was seeping or percolating into the basement of the Davis House, unknown to appellee at the time she struck the match causing the explosion and her subsequent injuries.

Also, although disputed, witnesses for appellee testified it was appellant's gas that caused the explosion.

Since there was evidence of probative value from which the jury might have drawn a reasonable inference that the gas of appellant was the gas that exploded, we cannot disturb the verdict—and since the jury found for appellee, we must presume that the jury determined that appellant's gas caused the explosion.

Next, we are confronted with appellant's argument that there was no negligence with which appellant could be charged, and that the leak in appellant's line might have been caused by temperature changes, pipe fatigue, heavy traffic, or Acts of God, or vis Major, therefore being merely an accident which could not have been foreseen by appellant and for which appellant could not be charged with any negligence.

Appellant cites as authority for this contention the case of *Wabash, etc., R. Co.* v. *Locke* (1887), 112 Ind. 404, 14 N. E. 391, in which an accident has been described as—

> "an event which, under the circumstances is unusual, and unexpected. An event the real cause of which cannot be traced, or is at least not apparent."

Also, from that same case —

> "Where an event takes place, the real cause of which can not be traced, or is at least not appar-

ent, it ordinarly belongs to that class of occurrences which are designated as purely accidental; and in a case like this where the plaintiff asserts negligence, he must show enough to exclude the case from the class of accidental occurrences."

This is also quoted by the Court in *Prest-O-Lite Co.* v. *Skeel* (1914), 182 Ind. 593, 599, 106 N. E. 365. Also, appellant cites the following from the case of *Terre Haute, etc. R. Co.* v. *Clem* (1889), 123 Ind. 15, 19, 23 N. E. 965:

"It is common knowledge that accidents occur which even the highest degree of care can neither anticipate nor prevent; but in cases where an extraordinary accident happens, which ordinary prudence could not have foreseen, or anticipated, neither a natural nor an artificial person is liable."

We have no quarrel with these general statements of law. Moreover, if the uncontradicted evidence in this case had excluded by its very nature an inference of negligence on the part of the appellant such as proof that "an act of God" or an intervening agency over which the appellant had no control caused the break in the gas main which caused the gas to escape ultimately causing the injury, there would be no liability. See *New York, Chi., etc. R. R. Co.* v. *Henderson* (1957), 237 Ind. 456, 469, 146 N. E. 2d 531, and cases cited therein. But, such is not true in this case.

In reviewing all of the evidence, we find that there was conflicting testimony concerning whether the pipe transporting the gas was new pipe at the time it was installed or used pipe. The jury could properly have determined that it was used pipe when it was installed approximately sixteen years prior to the date of the occurrence of the break in the pipe. There was also conflicting evidence as to whether or not the appellant

had made any inspections along the line in front of or near the Davis House looking for leaks before the break occurred. Donald E. Shaw, president of appellant company, testified that inspections along the line looking for gas leaks only had been made during the summer preceding November, 1953, and that no leaks had been found near the Davis House. This witness also testified that breaks had been found in the line and repairs had been made, but that no breaks had occurred or repairs made to the line in front of the Davis House during the eight years preceding the date of the explosion. There was also evidence introduced that breaks had occurred in the same line about a block or two north of the Davis House. Evidence was introduced that the State Fire Marshal had requested appellant, for the purpose of inspection in 1956, to dig up portions of the same line after an explosion had occurred at the Hone residence about a block or two north of the Davis House.

Dorse Powell, an employee of appellant, who conducted tests to ascertain leaks in the gas line, on cross-examination testified that he had tested for leaks only at points immediately above the location of the line and had made no tests in the Davis yard to determine if the gas was percolating in the ground.

We may assume from the verdict that the jury found that appellant was negligent [West's I. L. E., §513, p. 412; *Gregg* v. *Gregg* (1905), 37 Ind. App. 210, 75 N. E. 674], and unless there is a complete absence of any evidence from which the jury could have inferred or presumed that appellant was negligent, we will not disturb the finding or verdict of the jury, for it is well established that this Court will neither weigh evidence nor will it attempt to determine the preponderance of the evidence.

The evidence herein showed that appellant had

knowledge that breaks in pipe may be caused by temperature changes, vibration by passing trucks, and settling of ground. Confronted with this evidence, we are of the opinion that the jury could have inferred that the appellant was negligent in furnishing gas through pipes placed only about twenty-four inches below the ground, and that it therefore assumed the risks and consequences that may naturally flow from an undertaking involving such peril and hazard to innocent third persons, for it could have foreseen under such circumstances the probability of such lines breaking and thereby permitting gas to escape to the possible harm of adjacent property owners. Thus, it was not necessary for the appellant company to have had actual knowledge of the existence of a break in its line or a gas leak in its line in order for the jury to have drawn an inference of negligence under the circumstances above described. See discussion in: *Southern Indiana Gas Co.* v. *Tyner* (1912), 49 Ind. App. 475, 489, 97 N. E. 580, and also see the recent decision of this Court in the case of *City of Indianapolis, etc.* v. *Walker* (1960), 132 Ind. App. —, 168 N. E. 2d 228.

The jury having before it evidence from which it could have drawn an inference of negligence on the part of appellant under the circumstances of this case, found for the appellee. It follows therefore that since there was a sufficiency of the evidence to sustain the verdict, such verdict in favor of appellee was not contrary to law.

It also follows, since we have determined that the evidence was sufficient to support the verdict, that appellant's alleged error that the Court erred in overruling appellant's motion to instruct the jury for a directed verdict at the close of all of the evidence is of no merit.

Appellant also urged in its brief that the Court erred in giving instructions 6, 7, 8 and 9 tendered by appellee.

Appellee's instruction No. 6 reads as follows:

"I instruct you that if you find from a fair preponderance of the evidence herein that the defendant carelessly and negligently transmitted explosive gas through leaky pipes and mains which were unsafe and unfit for such transportation of gas and that said conditions were known by the defendant herein from previous experience with said mains, and that the gas line in front of the home of Ella Davis where the plaintiff was staying at the time of the alleged accident was leaky and had leaks in said line which allowed said gas to escape, leak and penetrate into the cellar and basement of the home of Ella Davis, and that as a result thereof, the same exploded and injured the plaintiff herein, and that plaintiff was free from contributory negligence, then in that event, I instruct you that the plaintiff would be entitled to recover in this case and your verdict should be for the plaintiff."

Although appellant's written objections are quite lengthy, nevertheless, appellant only preserved in its brief the objections that there was no evidence to show that said pipes were leaky and unsafe, and that there was lack of evidence to show that appellant had knowledge of the unsafe condition of the pipes. In view of our conclusion above that the evidence was sufficient to support the verdict, and our holding above that actual knowledge by the appellant of the unsafe condition of the pipes was not necessary, we conclude that said instruction was not erroneous.

Appellee's instruction No. 7 complained of by appellant reads as follows:

"I instruct you that if you find from a fair preponderance of all the evidence in this case that on November 14, 1953, the plaintiff herein went into the cellar of the house owned by said Ella Davis to

obtain a can of tomatoes or other food, and that she struck a match to see and obtain said can of food and that at said time, said defendant had carelessly and negligently allowed its inflammable and explosive gas to escape, leak and penetrate into said cellar and basement and as a result of which, when she struck said match, the same exploded ,with great force and violence and burned the plaintiff herein, and that plaintiff was free from contributory negligence, then and in that event, I instruct you that the plaintiff would be entitled to recover from the defendant in this case and that your verdict should be for the plaintiff."

Again, although appellant's objection was quite lengthy and argumentative, in its brief in support of its contention that said instruction was erroneous, appellant argues only that there was no evidence to support the assumption that it was appellant's gas that exploded and burned appellee. Here again in view of our conclusion above of the sufficiency of the evidence, appellant's argument is of no avail. Also, it has been held to be too general, objections that the instruction permits the jury to consider issues or alleged acts of negligence in support of which there is no competent evidence. *Pennsylvania R. Co.* v. *Sargent, Admx.* (1949), 119 Ind. App. 195, 83 N. E. 2d 793.

Instruction No. 8 of appellee given by the Court and complained of by appellant is as follows:

"It was the duty of the Gas Company, defendant herein, to so operate its pipelines and mains as to prevent the escape of gas therefrom in such quantities as to become dangerous to life and property.

"If you find, from a fair preponderance of all the evidence that at the time of the explosion in question, the defendant was operating its gas line along the east side of Union Street in the town of Westfield, Indiana, and that approximately forty feet north of the lot of Ella Davis said defendant had and maintained a shut-off valve in said line

which was leaking gas in such quantity as to become dangerous to life and property and that defendant carelessly and negligently allowed its inflammable and explosive gas to escape, leak and penetrate into the cellar and basement of the Davis house and as the proximate result of which, when the plaintiff struck a match, said gas exploded with great force and violence and burned the plaintiff herein, and that plaintiff was free from contributory negligence, then and in that event, I instruct you that the plaintiff would be entitled to recover from the defendant in this case."

Appellant urges that this instruction erroneously states the law in that the first paragraph thereof makes the appellant an insuror of the safety of its gas mains and places this cause of action in a strict liability category.

Under the authority of *Alexandria Mining & Exploring Company* v. *Irish* (1896), 16 Ind. App. 534, 44 N. E. 680; and *Mississinewa Mining Co.* v. *Patton* (1891), 129 Ind. 472, 28 N. E. 1113, the first paragraph of said instruction correctly states the law imposing such a duty upon appellant. However, this instruction does not make the appellant an insuror of the safety of its gas mains. Further, appellant again claims that there was no evidence to prove that it was the gas of appellant that exploded. This argument is merely a conclusion of appellant with which we do not agree.

Lastly, appellant claims that appellee's instruction No. 9 tendered and given by the Court was erroneous. Said instruction reads as follows:

"I instruct you that in considering the evidence in this case you may indulge in all reasonable inferences from the facts proven, and if you find from a preponderance of the evidence that gas escaped at such a point in defendant's gas mains on Union Street in the town of Westfield, Indiana, as

to make it reasonable to infer that said gas then percolated or flowed, whether through the ground, along the course of a sewer or old gas connection, or otherwise, into the basement of the Davis house, then I instruct you that it is not necessary for plaintiff to have established by any other evidence that the explosion involved herein was the proximate result of said leak."

Again, appellant concludes that there was a lack of any evidence to show how or where the gas could percolate and flow into the Davis house, and nothing from which the jury could so infer. Here again we are of the opinion that this was a proper instruction under the facts shown by the evidence, and that the appellant's objections thereto are merely the statement of conclusions upon the part of appellant.

Appellant attempts for the first time in its brief to object to instructions Nos. 6, 7, and 8 on the grounds that they are mandatory instructions and that they each were erroneous because as mandatory instructions they each failed to include all of the facts necessary to support the verdict. However, in the written objection to each of these instructions, appellant failed to state specifically what necessary fact was omitted. Hence, under Supreme Court Rule 1-7, appellant has waived its right to now claim error by failing to make specific objections known to the Court prior to the giving of these instructions. See Flanagan, Wiltrout & Hamilton, *Indiana Trial & Appellate Practice*, §1505, Ch. 18, p. 229, 230, and cases cited therein.

In reviewing all of the instructions above set out which were objected to by appellant, and in giving consideration to all of the unwaived objections of appellant addressed thereto, we are of the opinion that appellant has failed to discharge its burden of proving that any of said instructions were

erroneous and prejudicial as to unduly influence the jury thereby constituting reversible error.

Finally, appellant urged as error its Cause No. 11 in its Motion for New Trial reading as follows:

"Error of law occurring at the trial and excepted to at the time by the defendant, in that the Court erred at the trial in permitting Mr. Robert Haskett, on cross-examination, while testifying as a witness for the defendant, to answer and in refusing defendant's motion to strike out said questions objected to, as follows, to-wit:

Q. Was there a gas explosion in the Hone property in Westfield?

MR. RUSSELL I. RICHARDSON: My objection is this: that this is cross-examination and any subsequent explosion or what caused them or anything about them was not gone into on direct examination and would, therefore, be improper cross-examination.

THE COURT: Objection overruled.

REPORTER: Reads the question back.

A. There was a gaseous explosion, yes, to my knowledge.

Q. That property was in the north part of Westfield, was it not?

A. Yes.

Q. And that was served by this same gas main, wasn't it?

MR. RUSSELL I. RICHARDSON: I am objecting to that question for the reason that this is cross-examination and any subsequent explosion or what caused them or anything about them was not gone into on direct examination and would, therefore, be improper cross-examination.

THE COURT: Objection overruled.

A. Yes, I think it is, Yes.

MR. RUSSELL I. RICHARDSON: I move that answer be stricken for the reason that this is a cross-examination and any subsequent explosions or what caused them or anything

about them was not gone into on direct examination and would, therefore, be improper cross-examination.

THE COURT: Show the motion overruled."

Appellant says that said questions were contrary to the rule of law which has been stated as follows:

"It is a general rule that questions on cross-examination must be limited to the subject matter inquired about in the direct examination." 3 Work's Ind. Practice 192, §49.2; 58 Am. Jur. 349, §629.

Further, appellant cites as its only other authority the following:

"Ordinarily, a witness cannot be interrogated even in cross-examination as to collateral matters, that is, as to matters outside the issues." 3 Work's Ind. Practice 195, §49.2.

However, there seems to be a tendency in recent Supreme Court decisions in Indiana to follow the general rule on scope of cross-examination in holding that the "character and limits of cross-examination rest within the sound discretion of the court." *Barker* v. *State* (1957), 238 Ind. 271, 279, 150 N. E. 2d 680. In the case of *Kelley* v. *State* (1948), 226 Ind. 148, 153, 78 N. E. 2d 547, our Supreme Court said:

"The court has a wide discretion in controlling the examinations of witnesses. While a cross-examiner is not necessarily restricted to the specific matter of the direct examination and should be permitted to go into any and all phases of the general subject that has been opened on direct examination, nevertheless, the whole matter of cross-examination rests in the sound discretion of the court. See R.C.L., Witness, §196.12, 606; *Henry* v. *State* (1925), 196 Ind. 14, 146 N. E. 822."

To show error that will cause a reversal of a cause it is necessary to show to this court that the trial court abused its discretion in the reception of evidence. *Henry* v. *State, supra*. This the appellant failed to do.

The existence of prejudicial error must appear from the record of the case on appeal, and our Court reviews a trial court's record with the presumption that the record is free from harmful error. *Henderson* v. *Kleinman* (1953), 231 Ind. 657, 109 N. E. 2d 905; West's I. L. E. Vol. 2, Appeals, §602, p. 558.

Appellant has argued in its brief that ordinarily a witness cannot be interrogated on cross-examination as to collateral matters, that is, as to matters outside the issues. However, as to the class of errors which are intrinsically collateral and without influence on the final result, the rule is that the record must not only establish error, affirmatively, but also its prejudicial effect upon the party complaining. *Kraft* v. *Himsel Stock Yards* (1957), 127 Ind. App. 238, 139 N. E. 2d 569; West's I. L. E. Vol. 2, Ch. 18, §602, p. 559. One alleging error must show prejudice therefrom, and there must be an affirmative showing that it is not unlikely that the error injured the party complaining. West's I. L. E., *supra*, and cases cited therein. Appellant has failed to show such prejudice.

Finding no reversible error, judgment is affirmed.

Cooper, Myers, and Ryan, JJ., concur.

NOTE.—Reported in 169 N. E. 2d 726.