## Louisville Gas & Electric Co. v. Dulworth.

June 20, 1939.

James Garnett, Judge.

Peter, Heyburn, Marshall & Wyatt for appellant.

Leo J. Sandmann for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

On or about October 28, 1937, the Louisville Gas & Electric Company, a corporation, hereinafter referred to as the company, discontinued electric service to William Dulworth at his place of business located at 728 West Market Street in Louisville.

Thereupon he filed a petition for a mandatory injunction alleging in substance that under the contract the company had agreed to render electrical service to him at his place of business and that he had complied with all the terms and conditions of the contract and had promptly paid his bill each month when due, including service for the month of October, 1937, but that on the 28th of that month the company without prior notice or warning and in violation of his rights had cut off his electric service; that he had demanded that the service be restored but that the company had refused and continued to refuse to do so in violation of their contract and agreement with him.

The company filed a special demurrer challenging the jurisdiction of the court but that and a general demurrer to the petition were overruled. The company's answer consisted of a plea to the jurisdiction of the court, a traverse of the material parts of the petition and as an affirmative defense alleged in effect that it discontinued electric service to appellee at his place of business because of discovery by it that methods had been employed on the premises of plaintiff which interfered with the proper metering of electric service theretofore rendered him.

Judgment was entered sustaining plaintiff's motion for a temporary injunction mandatorily ordering the company to restore electric service to his premises conditioned upon his paying to the company $25 to cover cost of installation of protective devices designed to prevent tampering with the meter and using current that had not been registered and also requiring him to execute bond in the sum of $500. Upon compliance by plaintiff with the requirements of the order the company reconnected and thereafter continued service to him. On final hearing plaintiff's motion for a permanent mandatory injunction was sustained and the company is appealing.

It is first contended by appellant that the Public Service Commission Act of 1934, Kentucky Statutes, 3952-1 to 3952-61, which created the Public Service Com-

mission of Kentucky and defined its powers and duties, invests such commission with exclusive jurisdiction over the matters in controversy. We shall refer to various portions of the act by subsections as they appear in the statute. In support of the contention that the public service commission and not the court has jurisdiction over matters of this character, portions of various subsections of the Public Service Commission Act and authorities from this and other jurisdictions are cited.

Taking up first the foreign cases relied on by appellant, we find that one holds in effect that the court and not the public service commission has jurisdiction to construe the commission's orders. Another holds that original jurisdiction to determine questions as to which if any of the several rates is applicable to purchasers of electricity from public utilities under particular conditions and circumstances surrounding its use, is left with the railroad and public utility commissions. A third holds that a contract regarding schedules of rates and charges is subject to the supervision of the utility commission. A fourth and the one at first giving us greatest concern is that of Hickey v. Philadelphia Electric Company, 122 Pa. Super. 213, 184 A. 553, wherein Hickey sought to recover from a utility company a sum which he had paid it to prevent discontinuance of service to him that had been demanded to reimburse the company for damage done to a meter which it was claimed Hickey had tampered with and also as compensation for unmetered current used. It was held that the public service commission alone had primary jurisdiction of the matter. The opinion referred to, supra, is also reported in 14 P. U. R., N. S., 349. An examination of that opinion will disclose that it is provided in substance by Article 5, Section 5, of the Pennsylvania Public Service law, 66 P. S. Pa., Section 511, that if the commission, after hearing upon its own motion or upon complaint, shall determine, inter alia, that any act then done or omitted to be done, or any regulation or practices enforced by any public utility in relation to service rendered, are unjust, unreasonable, or unjustly discriminatory, the commission shall have power and authority to order reparation and direct payment to any complainant of damages sustained in consequence of such unjust, unreasonable, or unlawful acts, regulations or practices. That section further provides:

"No action shall be brought in any court on account

of any of the wrongs or injuries referred to in this section, unless and until the commission shall have determined that the \* \* \* regulation \* \* \* practice, act or omission in question was unjust, unreasonable, or unjustly discriminatory \* \* \* and, then, only to recover such damages as may have been awarded and directed to be paid by the commission in said order."

Therefore, it is apparent that none of the foreign cases cited sustain appellant's contention.

Appellant also cites and relies on Smith v. Southern Bell Telephone & Telegraph Company, 268 Ky. 421, 104 S. W. (2d) 961, 962. In that case as appears from the opinion, the circuit court clerk of Pike county instituted an action to compel the telephone company to furnish service to his public office in the following manner:

"(1) Telephone service confined to Pikeville exchange, with no toll calls either inbound or outbound, or (2) Both exchange and toll service,—exempting him, however, from liability for tolls on inbound or outbound calls unless the Telephone Company shall first make sure that plaintiff consents to pay tolls on such calls."

It was held that primary jurisdiction of the matter rested with the public service commission. In that case the clerk was asking for a service not common to others nor authorized by the utilities act or any rules or regulations of the commission; and if the telephone company could in any circumstances be required to furnish the service it would only be under rules and regulations promulgated by the utility commission or act of the legislature. If the company without cause had cut off and discontinued to the clerk service which it was furnishing to the public generally an entirely different situation would have been presented. Counsel lay stress on that portion of the opinion which reads:

"If, in fact, any single subscriber had a real and substantial ground or reason for complaint, the act authorizes the commission, of its own motion, acting in the interest of the public and the individual subscriber, to hear the complaint and after due investigation and hearing, to correct any unreasonable situation that might exist."

But the writer of the opinion evidently had in mind

subsection 14 which relates to rates, tariffs, tolls and schedules and even in such matters the commission may upon its own motion or upon complaint as provided in subsection 33, after hearing had upon reasonable notice, determine the matter. Under subsection 33 a hearing of a complaint may not be had upon the complaint of a single individual but only upon complaint of ten persons, firms, corporations, etc.

Counsel for appellant quote portions of subsections 1, 13, 18, 27, 32 and 33. The quoted portion of subsection 1 is a definition of the word "service" as used in the act. Subsection 13 relates to the general powers of the commission, investing it with power to investigate methods and practices of utilities and to require them to conform to the laws of the commonwealth and to all reasonable rules and regulations of the commission not contrary to the law. Subsection 18 confers upon the commission the power to hear and determine upon its own motion or upon complaint as provided in subsection 33 matters relating to rules, regulations, practices, equipment, appliances, utilities, or service of any utility or methods of manufacture, distribution, transmission or storage or supplies employed by it. Subsection 27 relates to the authority of the commission with respect to rates, tolls, schedules, etc., and to the police powers of municipalities in such matters but provides that the regulation of rates and service is within the exclusive jurisdiction of the public service commission. Subsection 32 forbids the granting by a utility of unreasonable privileges or advantage to any person or corporation. Subsection 33 relating to complaints and procedure provides that the commission may hear and determine complaints concerning rates, tolls, charges of schedules in which the petitioner is directly interested, as to whether they are in any respect unreasonable or unjustly discriminatory or whether any regulation, measure, practice or act affecting or relating to the service of any utility or any service in connection therewith is in any respect unreasonable, unjust or unjustly discriminatory, etc. but as already noted, such hearing cannot be had except upon complaint by ten persons, firms, corporations or associations who are customers of the utility complained of or upon the commission's own motion. It will be noted that none of the subsections cited and relied on gives to an individual the right to require the commission to give him a hearing upon any complaint

that he may have against the utility company but that a hearing may be demanded only when ten persons join in the complaint. The commission upon its own motion might hear and determine the complaint of an individual but the act does not make it obligatory that it do so. In Carter v. Suburban Water Company, 131 Md. 91, 101 A. 771, L. R. A. 1918A, 764, it was held in effect that the court had jurisdiction against a water utility to restrain it from shutting off the water for failure to pay a disputed bill and this notwithstanding contention that the matter was within the exclusive jurisdiction of the public service commission.

In 51 C. J. 41, Section 80 it is said:

"Unless exclusive power is given to the commission, the authority conferred upon it does not deprive the courts of jurisdiction over the same matters, and an application to the commission is not a prerequisite to an action before the court to obtain the relief with respect thereto."

In Central States Power & Light Corp. et al. v. Thompson, 177 Okl. 310, 58 P. (2d) 868, it is indicated in substance that where the matter complained of is one of purely private concern between the utility and one of its patrons, courts have jurisdiction to hear and determine the controversy. See also Steele v. Clinton Electric Light & Power Company, 123 Conn. 180, 193 A. 613, 112 A. L. R. 232; James v. Okl. National Gas Company, 181 Okl. 54, 72 P. (2d) 495. Southwestern Natural Gas Company v. Cherokee Public Service Company, 172 Okl. 325, 44 P. (2d) 945.

It is our conclusion that the public utility commission act does confer upon the public utilities commission of Kentucky primary jurisdiction over public utilites with respect to tolls, schedules, rates, charges, service, etc., generally, but that it does not expressly nor by inference or implication vest the commission with exclusive jurisdiction on complaint made by an individual in cases of this character.

Subsection (d) of rule 10 of Rules and Regulations for the governing of utilities promulgated by the public service commission of Kentucky provides:

"When the utility discovers that a customer has obtained service without such service having been registered on the meter in whole or in part, as evi-

denced by mechanical contrivances retarding meter registration, or any method which interferes with the proper metering of such service, or where a comparison of registration by an outside check meter discloses a discrepancy or irregularity of registration not due to any inherent defect in the customer's meter, the utility may immediately disconnect the service to the customer, and by written notice to the customer may require the customer at the customer's expense to install protective equipment and make proper changes in the service entrance facilities of approved type, all of which shall be done as may be required by the utility before service is restored.''

Appellant claims that upon discovery that the meter on appellee's premises had been tampered with and service obtained without same being registered by the meter, it, under the authority of the quoted excerpt from the rules, cut off appellee's service. There is a sharp controversy as to whether appellee was entitled to advance notice as provided in rule 10 before the service was discontinued but it is unnecessary to determine that question except to say that he at least was entitled to notice provided for after the discontinuance of the service and the evidence shows that no notice whatsoever was given. Since we conclude that the court had jurisdiction, the only question remaining to be determined is whether the evidence sustained the judgment granting injunctive relief.

An opinion rendered by Judge Garnett when the temporary injunction was granted is found in the record and contains an exhaustive review of the evidence. Without going into detail the evidence for appellant is to the effect that its employees found evidence that the meter had been tampered with in that the lead seal that had been placed upon it had been mutilated and the glass in the door in the meter was loose and out of place; that there were some markings on an aluminum disk of the meter. This was a new meter installed after the flood in Louisville. Bills showing consumption of electricity as indicated by this meter and the one formerly in use on the premises were filed in evidence. The evidence of appellee is to the effect that neither he nor any of his employees had tampered with or in any way interfered with the meter. He and others testified that a number of employees of appellant often inspected the

meter and that in August two of them had disconnected it and had taken it apart. In referring to the scratches or marks on the aluminum disk Judge Garnett calls attention to the fact that the marks go straight across the disk and that if a contrivance had been inserted in the meter as a brake to retard the movement of the disk the mark would have been around the disk instead of straight across. He also calls attention to the fact that the bills made out by appellant and filed in evidence do not support appellant's contention that appellee was receiving electric service which had not been registered on the new meter. If the meter in question was not properly registering the current received by appellee that fact could have easily been ascertained by the use of proper appliances as is revealed by the evidence but this was not done. Although appellant's employees claimed to have discovered the meter had been tampered with, it was two or three weeks later before the service was finally cut off. On the whole the evidence and the proven facts and circumstances fully sustain the chancellor's finding.

Judgment affirmed.