**INDIANA FORGE AND MACHINE COMPANY, INC.,**
**Plaintiff-Appellant,**

v.

**NORTHERN INDIANA PUBLIC SERVICE COMPANY,**
**Defendant-Appellee.**

No. 3–277A55.

Court of Appeals of Indiana, Third District.

Nov. 15, 1979.

Fred M. Cuppy, Gerald K. Hrebec, J. Philip Klingeberger, Gary, for plaintiff-appellant.

William H. Eichhorn, David C. Jensen, Eichhorn, Morrow & Eichhorn, Hammond, for defendant-appellee.

GARRARD, Presiding Judge.

We have consolidated two appeals brought by Indiana Forge and Machine Company, Inc. (Forge) a customer of Northern Indiana Public Service Company (NIPSCO). Both cases were instituted to challenge NIPSCO's right to curtail Forge's use of natural gas. The first case was instituted in the Lake Superior Court seeking declaratory relief, an injunction and damages. It was dismissed for lack of subject matter jurisdiction. In the second case Forge appeals from orders of the Public Service Commission approving emergency petitions filed by NIPSCO.

### I. Civil Action

Forge's complaint was dismissed upon the ground that exclusive jurisdiction lay with the Public Service Commission. Forge asserts its complaint sought an adjudication of its rights under its contract with NIPSCO, alleged a breach of that contract and sought injunctive relief and damages. It contends these forms of relief are available through the courts but not an administrative agency. Therefore, it urges the court had subject matter jurisdiction.

■ We disagree. A trial court does not enjoy subject matter jurisdiction simply because it can provide remedies which are unavailable to administrative bodies. *Indiana Bell Telephone Co. v. Friedland* (1978), Ind.App., 373 N.E.2d 344.

■ The jurisdictional question is controlled by the kind of claim presented, not the manner of its pleading. *State ex rel. Young v. Noble Cir. Ct.* (1975), 263 Ind. 353, 332 N.E.2d 99. Where the legislature has provided an exclusive administrative remedy, the courts are without jurisdiction until the statutory procedure has been exhausted or denied. *PSC v. City of Indianapolis* (1956), 235 Ind. 70, 131 N.E.2d 308; *Decatur Co. REMC v. PSC* (1971), 150 Ind.App. 193, 275 N.E.2d 857.

■ Forge argues that the PSC has no jurisdiction over the construction of or breach of contracts and that it cannot award damages. However, these factors will not deprive the agency of jurisdiction if the claim is otherwise committed to agency review.

"On the question whether the doctrine [primary jurisdiction] applies to problems or relief which are beyond administrative jurisdiction, the theory seems reasonably clear. The test is not whether some parts of the case are within the exclusive jurisdiction of the courts; the test is whether some parts of the case are within the exclusive jurisdiction of the agency. Because of the purpose of the doctrine—to assure that the agency will not be bypassed on what is especially committed to it—and because resort to the courts is still open after the agency has acted, the doctrine applies even if the agency has no jurisdiction to grant the relief sought."

3 Davis, Administrative Law Treatise § 19.-07 at 39 (1958).

Here the unmistakable essence of Forge's claim is the assertion that the rules and regulations upon which NIPSCO justified its curtailment policy were unreasonable and arbitrary.

IC 8–1–2–69 vests in the Commission authority to make such determinations:

"Inadequate service—Orders.—Whenever, upon investigation made under the provisions of this act [8–1–2–1—8–1–2–120], the commission shall find any regulations, measurements, practices, acts or service to be unjust, unreasonable, unwholesome, unsanitary, unsafe, insufficient, preferential, unjustly discriminatory or otherwise in violation of any of the provisions of this act; or shall find that any service is inadequate or that any service which can be reasonably demanded cannot be obtained, the commission shall determine and declare and by order fix just and reasonable measurements, regulations, acts, practices or service to be furnished, imposed, observed and followed in the future in lieu of those found to be unjust, unreasonable, unwholesome, unsanitary, unsafe, insufficient, preferential, unjustly discriminatory, inadequate, or otherwise in violation of this act, as the case may be, and shall make such other order respecting such measurement, regulation, act, practice or service as shall be just and reasonable."

Forge asserts, however, that there is no method by which Forge can challenge the adequacy of the service it receives and, therefore, it must have recourse to the judiciary.

The investigation contemplated by IC 8–1–2–69 results from a complaint presented to the Commission and is subject to the procedural requirements contained in IC 8–1–2–54:

"Complaints—Investigation and hearing.—Upon a complaint made against any public utility by any mercantile, agricultural or manufacturing society or by any body politic or municipal organization or by ten [10] persons, firms, corporations or associations, or ten [10] complainants of all or any of the aforementioned classes, or by any public utility, that any of the rates, tolls, charges or schedules or any joint rate or rates in which such petitioner is directly interested are in any respect unreasonable or unjustly discriminatory, or that any regulation, measurement, practice or act whatsoever affecting or relating to the services of any public utility, or any service in connection therewith, is in any respect unreasonable, unsafe, insufficient or unjustly discriminatory, or that any service is inadequate or cannot be obtained, the commission shall proceed, with or without notice, to make such investigation as it may deem necessary or convenient. But no order affecting said rates, tolls, charges, schedules, regulations, measurements, practice or act, complained of, shall be entered by the commission without a formal public hearing."

As Forge contends, the statutory relief *must* be afforded only upon complaint by mercantile, agricultural and manufacturing societies, bodies politic, municipal organizations, public utilities, or a combination of 10 persons, firms, corporations or associations. It is not made applicable to individual utility customers. Thus, Forge claims it has no possibility of seeking redress from the Commission.

To repeat the language of *PSC v. City of Indianapolis, supra,* a statutory procedure for review

". . . excludes any common law or equitable procedure *to the extent such statutory provisions are adequate in protecting and preserving such substantive rights* guaranteed by the Constitution, the statutes or general principles of law." (Emphasis added)

235 Ind. 70, 83, 131 N.E.2d 308, 313.

If we assume Forge has a substantive right to continued utility service, the issue becomes the adequacy of the protection afforded by IC 8–1–2–54.

■ Kentucky has a statute identical to IC 8–1–2–54 and in *Smith v. Southern Bell Telephone & Telegraph Co.* (1937), 268 Ky. 421, 104 S.W.2d 961, the court concluded that its statute provided an adequate remedy. While the court stated that the utility service in question (telephone service) did not attain the stature of a property interest, it also noted that even protected interests were subject to legislatively imposed limitations when public welfare so demanded. The court pointed out that by setting a minimum number of individuals or entities necessary to file a complaint, the legislature had reduced the opportunity for frivolous complaints. Noting the importance of uniformity of rates and services, as well as preservation of Commission resources, the court commented that if the objected to rate or service affected a significant number of customers, there should be little difficulty in one aggrieved individual finding the requisite number to join in a complaint.

The *Smith* opinion [1] also pointed out that even if an aggrieved individual could not find others to join, nothing precluded the Commission from considering an individual complaint because another statute permitted the Commission to hear complaints on its own motion. Indiana has a similar statute, IC 8–1–2–58. Thus, we cannot say that Forge was precluded from utilizing the statutory procedure to challenge the curtailment regulation. It should be recalled that remedies need not be perfect in every respect to be deemed adequate. *Cooper v. Co. Bd. of Review* (1971), 150 Ind.App. 232, 276 N.E.2d 533.

■ Thus, Forge has not established it was without access to the Commission. It should have brought its complaint there. Having failed to do so, it failed to exhaust its administrative remedies, the necessary precursor to judicial review. *See Indiana Bell Telephone Co. v. Friedland, supra.*

## II. *Agency Action—Curtailment Regulations*

Forge's second appeal concerns two orders of the Public Service Commission approving emergency petitions filed by NIPSCO. Alleging insufficient gas to supply the needs of its customers because of a cutback in supplies available to it and the severity of the winter weather, NIPSCO petitioned to establish Rule 34 to supersede its Rule 30.[2] The proposal established

1. Later Kentucky cases (*Bee's Old Reliable Shows, Inc. v. Kentucky Power Co.* (Ky.1960), 334 S.W.2d 765; *Louisville Gas & Electric Co. v. Dulworth* (1939), 279 Ky. 309, 130 S.W.2d 753) have upheld *Smith* while allowing individuals to bring actions before the courts without prior resort to the agency. The distinction drawn is that *Smith* involved a challenge to rates and service in force throughout the utility district, but the later cases were concerned with private matters; that is, a resolution of the issues would affect no other customer. *Dulworth* involved termination of service for failure to pay a bill and *Bee's* involved billing and service of a unique nature. The court stated that exclusive jurisdiction did not reside in the Commission where matters purely private between the utility and a single customer were raised. Oklahoma has made a similar distinction. *Central States Power & Light Corp. v. Thompson* (1936), 177 Okl. 310, 58 P.2d 868. The reasoning in these cases has been criticized for failing to recognize that ". . . nearly all problems affected by the doctrine of primary jurisdiction have both public and private aspects in varying proportions." 3 Davis, *supra* § 19.08 at 49–50.

2. Rule 30 provided,
 "EMERGENCY GAS CURTAILMENTS
 Any Firm Gas' requirement or 2,000 Mcf (20,000 therms) or more per day added by any Industrial Gas Customer after March 1, 1970, shall be subject to curtailment in the event of an emergency wherein the Company's available gas supply is insufficient to meet the Firm Gas requirements of all customers of the Company. During such emergency, each such customer shall curtail or

classes of customers, priorities among the classes and procedure for curtailment in the event of shortage of gas supply. Included was provision for a penalty of ten dollars ($10) per thousand cubic feet of gas consumed by commercial and industrial customers in excess of 105% of the amounts allocated to them. NIPSCO also requested that the rule take immediate effect.

The original petition was filed February 3rd. It was verified and included as "Exhibit A" the governor's proclamation of January 27, 1977 declaring an emergency with regard to the supply of natural gas, propane and middle distillate fuels. No notice of this petition was given to the public counselor, no additional testimony was taken, and the petition was approved that same day to be effective immediately as an emergency temporary rule. The order proceeded to set a public hearing for March 8th to determine whether the curtailment provisions were "sufficient and equitable" and "to hear evidence on proposed modifications and refinements thereof" and determine if the rule should receive "permanent" approval. Commission's Order at 3–4.

Five days later NIPSCO filed a verified petition to supplement and modify Rule 34 together with the public counselor's formal waiver of notice and hearing. Again no additional testimony was presented and the Commission approved the supplemental petition pending the public hearing of March 8th.

Forge contends these orders are invalid. NIPSCO relies upon the authority of IC 8–1–2–113 which provides,

"The Commission shall have the power, when deemed by it necessary, to prevent injury to the business or interests of the people, or any public utility of this state, in case of any emergency, to be judged of by the commission, to temporarily alter,

amend, or with the consent of the public utility concerned, suspend any existing rates, service, practices, schedules and order relating to or affecting any public utility or part of any public utility in this state. Such alterations, amendments, or suspensions of such rates, service, schedules or practices so made by the commission, shall apply to one or more of the public utilities in this state or to any portion thereof, as may be directed by the commission, and shall take effect at such time and remain in force for such length of time as may be prescribed by the commission."

Forge's challenges to the Commission's action pursuant to IC 8–1–2–113[3] may be grouped into three basic categories for purposes of discussion.

Forge first contends it was denied due process because it was not given notice and opportunity for hearing before the Commission entered the temporary orders concerning Rule 34. We disagree.

■ This section of the statute contemplates that the Commission should be empowered to take temporary action in case of emergency for the benefit of the public interest. Thus, while the Commission may not refuse to consider a petition for relief under this section, *PSC v. Indianapolis Railways* (1947), 225 Ind. 30, 72 N.E.2d 434, it need not afford notice and hearing to other interested parties prior to taking action. *Boone Co. REMC v. PSC* (1959), 239 Ind. 525, 159 N.E.2d 121.

The due process clause of the Fourteenth Amendment does not require a different result. In fact, it leads to the conclusion that a hearing is unnecessary. No denial of due process occurs

" . . . when the state's interest in acting promptly to protect the public

---

discontinue the use of said gas to the extent directed by the Company."

3. Forge points out that NIPSCO's first petition did not refer to IC 8–1–2–113, nor did the Commission specifically refer to that statute in finding that it had jurisdiction. However, any effect of this omission is cured by IC 8–1–2–116 which states that substantial compliance with

the requirements of the Act is sufficient to give legal effect to an order and that no order is to be declared void for an omission of a technical nature. If the Commission's actions were otherwise valid under § 113, the failure to refer expressly to that section in the initial order is harmless.

against a serious threat to its safety, health or economic well-being outweighs the individual's interest in having an opportunity to be heard before the state acts, perhaps in error, in ways that may cause him significant injury."

Friedman, *Summary Action in Administrative Agencies*, 40 U.Chi.L.Rev. 1, 27 (1972).

This philosophy has been used to uphold summary seizures of possibly contaminated foods, *North American Cold Storage Co. v. City of Chicago* (1908), 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195, and mislabeled products which were not claimed to be dangerous, *Ewing v. Mytinger & Casselberry, Inc.* (1950), 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088, as well as to justify a number of actions taken in the "national interest," *e. g., Bowles v. Willingham* (1944), 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892; *Yakus v. United States* (1944), 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834. As stated in 1 Davis, Administrative Law Treatise § 7.08 at 438 (1958):

> "If the contagion is spreading, or the harmful medicinal preparation is being sold to the public, summary administrative action in advance of hearing is appropriate. In the judicial system, even when personal liberty is involved, tradition permits imprisonment of the accused pending trial. Temporary restraining orders against defendants who have had no opportunity to participate in an ex parte hearing of the plaintiff are commonplace. Drastic administrative action is sometimes essential to take care of problems that cannot be allowed to wait for the completion of formal proceedings."

In *Ewing v. Mytinger & Casselberry, Inc.* (1950), 339 U.S. 594, 599, 70 S.Ct. 870, 873, 94 L.Ed. 1088, the court used the following language to support its rejection of a claim to a hearing before seizure:

> "It is said that these multiple seizure decisions of the Administrator can cause irreparable damage to a business. And so they can. The impact of the initiation of judicial proceedings is often serious. . . . The impact of an indictment is on the reputation or liberty of a man.

The same is true where a prosecutor files an information charging violations of the law. The harm to property and business can also be incalculable by the mere institution of proceedings. . . . Discretion of any official may be abused. Yet it is not a requirement of due process that there be judicial inquiry before discretion can be exercised. It is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination."

Forge relies on *Fuentes v. Shevin* (1972), 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 to point out that not all summary action is immune to due process challenge. However, we think such cases are clearly distinguishable in that their direct effect is upon purely private rights rather than considerations of public health and safety.

■ We hold the requirements of due process are satisfied by the Commission's order affording notice and full hearing within a reasonable time and before the rule was to be made permanent.

■ Forge next contends that § 113 is an unconstitutional delegation of legislative authority because it sets no standard by which the Commission is to determine whether an emergency exists. Forge cites *State ex rel. Standard Oil Co. v. Rev. Bd.* (1951), 230 Ind. 1, 101 N.E.2d 60 and *Schakel v. Rev. Bd.* (1968), 142 Ind.App. 475, 235 N.E.2d 497, where a provision in the employment security act was struck down for this reason where the statute failed to define "good cause."

We need not belabor our discussion of this contention. In *State ex rel. Indianapolis Traction & Terminal Co. v. Lewis* (1918), 187 Ind. 564, 120 N.E. 129 our Supreme Court considered, defined and applied the term "emergency" used in the very section now before us. Under such interpretation the term is as definitely described as reasonably is practicable and does not constitute an unconstitutional delegation of legislative power.

Forge's remaining contention is that the Commission's actions were contrary to law for the failure to follow a variety of procedures applicable to regular Commission action. The essential defect of these arguments is that they fail to acknowledge the proper exercise by the Commission of the temporary emergency power authorized by § 113.

 It is first asserted that the Commission failed to make proper findings of basic fact and/or that its findings are not supported by evidence in the record.

The Commission's findings in essence declared that an emergency existed due to unprecedented weather conditions which were of continued and unknown duration; that NIPSCO's supply of gas was insufficient to meet the requirements of its customers; and that the public interest required establishing a system of use priority in order to protect high priority and human need users and to more equitably distribute curtailment among low priority users.

Forge contends that such findings fail to meet the requirements of *City of Evansville v. So. Ind. Gas & Electric Co.* (1975), Ind. App., 339 N.E.2d 562 concerning findings of basic fact. We disagree. While the findings do not constitute a model for Commission action, they are adequate when viewed for the temporary and emergency nature of the action taken. *Cf. Boone Co. REMC v. PSC, supra; Twin City Realty Corp. v. Clay Utilities, Inc.* (1970), 146 Ind.App. 629, 257 N.E.2d 686.

 Nor do we find, as Forge contends, that they are unsupported by the evidence. Forge's argument is grounded upon the assumption that the Commission could not properly consider the verified allegations of the petitions as evidence. However, the Commission's rules specifically allow verified pleadings or affidavits to be accepted as evidence of the matters contained therein provided the affiants are made available for cross examination. Burns Admin.Rules & Regulations (Code Ed.) (8–1–2–47)–18(d). While, as Forge points out, the record does not affirmatively disclose that the persons who verified the petitions were available for cross examination, that does not constitute harmful error. The purpose of the proviso is to assure both the Commission and adverse parties of the right to cross examination. Here the petitions were heard *ex parte* and the Commission clearly elected to forego any cross examination. Thus, even if the affiants were not presently available, the error was harmless.[4]

The governor's emergency proclamation and the verified allegations of the petitions provided the necessary evidentiary support for the findings.

 Forge next contends the public counselor should have been given notice of the filing of the original petition. We do not address the substance of this claim, since his express waiver filed with the supplemental petition rendered the potential error harmless. IC 8–1–1–4.

 Finally, Forge argues that IC 8–1–2–42, which requires 30 days' notice to the Commission when a utility proposes to change its schedule of rates, and IC 8–1–2–61, which requires ten days' notice by publication when a utility files a complaint or petition to increase its rates, preclude the Commission's emergency action. Neither of these provisions is applicable since NIPSCO's petitions did not seek to change its rate schedule.[5] The petitions dealt with establishing use priorities to meet inadequate supply. The fact that the petition sought to impose a penalty upon users who did not abide by the curtailment plan does not transform this into a rate case. IC 8–1–2–1 defines a "rate" as any fare, toll, charge, rental or other compensation paid to a utility. Read in conjunction with IC

---

4. On the other hand, had the Commission sought cross examination and discovered the witnesses unavailable, there would have been no error available to NIPSCO had the evidence been rejected or stricken.

5. Since no rate increase was requested, we do not reach the question of the Commission's power to temporarily alter rates pursuant to § 113 without notice.

8–1–2–4, rates refer to charges for services. The penalty provision that was proposed was not addressed to the utility's cost of service. It is instead a method for controlling consumer usage. *See Mississippi Pub. Svc. Comm. v. FPC* (5th Cir. 1975), 522 F.2d 1345.

The decisions are affirmed.

BUCHANAN, C. J. (sitting by designation), and CHIPMAN, J. (sitting by designation), concur.