WALLACE, STATE ENTOMOLOGIST, ET AL. *v.* DOHNER ET AL.

[No. 13,189. Filed March 27, 1929. Rehearing denied May 31, 1929.]

*Leonard, Rose & Zollars* and *Colerick, Jackson & Parrish,* for appellants.

*Atkinson & Husselman, H. C. Springer* and *H. W. Mountz,* for appellees.

REMY, J.—Appellees, being the owners and in possession as tenants by entireties, of a farm located in DeKalb county, did, in the spring and summer of 1926, produce on the farm a crop of corn which became infected with an insect known as the "European corn borer." In February, 1927, the Conservation Department of the state, for the purpose of preventing the spread, and for the destruction, of the insect, promulgated a regulation order, by which certain sections of the state, including appellees' farm, were placed under quarantine. The order, among other things provided: ."Before May 1, all corn within an infested area shall be cut or caused to be cut, within three inches of the ground, or standing stalks or higher stubble shall be snapped at the ground line, raked and burned or completely buried by plowing under by respective owners thereof, and all corn-stalks within an infested area be by said owners disposed of, or caused to be disposed of, by ensilage,

shredding, burning or completely buried by plowing under." In April, 1927, appellees planted oats and barley in the same field which had been planted in corn the previous year, and, in so doing, many cornstalks were, in violation of the order, left upon the surface of the field. This violation of the quarantine order having come to the knowledge of the State Entomologist and his assistant, appellants herein, they at once conferred with appellees with reference to the matter, and made threats to enter upon the land for the purpose of destroying the infected stalks if the owners did not at once comply with the order. Thereupon, appellees commenced this suit against appellants to enjoin them from entering upon the land. It was averred in the complaint that if appellants were not restrained by the court, they would go upon the land, would walk through and upon the growing oats and barley, thereby causing irreparable damage to appellees. To the complaint, appellants, in addition to denial, filed a second paragraph of answer, in which they set up in detail the facts as to the nature and habits of the corn borer—among other things, that the first stage of the insect is a worm, hatched from an egg laid by a moth on the corn leaf of growing corn; that the worm enters the stalk or ear of the growing corn, where it remains till the month of June of the succeeding year, when it emerges fully transformed into a moth to repeat the process; that the insect has already infested large areas in the northeast section of the United States, including New England, New York, northern Ohio and a few counties in the northeastern part of this state, including a part of DeKalb county, the counties in this state having become infested during the year previous to the commencement of this suit; that the infestation has been moving west and south at the rate of about twenty miles a year, and if unchecked, the corn lands of all the states will in time be-

come infested; that the only known way to control the pest is to convert the corn crop into ensilage or destroy or plow under the stalks and cobs within the infested district. Then follow averments as to establishment by the Conservation Department of the quarantine to destroy or control the insect and to prevent the spread of the infestation, the quarantine order being set out in full as a part of the answer. The refusal of appellees to comply with the order, of which they had notice, is also averred. To the second paragraph of answer, appellees replied by denial.

On the trial, the facts as above stated, including the material facts alleged in the affirmative answer, were established by the evidence. Finding and judgment for appellees.

The one question presented which will require consideration by this court is: Did the State Entomologist and his assistant, as representatives of the Conservation Department of the state, have the right to go upon the land of appellees where the crops were growing, and destroy the cornstalks and cobs which lay upon the surface? If the question is answered in the affirmative, the judgment must be reversed; if in the negative, affirmed.

Under §24 of the Conservation Act of 1919 (Acts 1919 p. 375, §4749 Burns 1926), the office of State Entomologist as a separate department of the state government was abolished, and all powers exercised by such officer were transferred to the Conservation Department, one branch of which is the "Division of Entomology," the chief of which division is the State Entomologist. §4736 Burns 1926. The Conservation Department of the state is given broad powers. It is authorized, through the State Entomologist, to inspect agricultural plants and plant-products, to prevent the introduction and spread of diseases or pests injurious to agricultural plants, "and to specify the means and methods to be

employed for the prevention, suppression and control of such diseases or pests," and to "make all necessary rules and regulations for the enforcement of the law relating to . . . the prevention of plant diseases and pests." §4740 Burns 1926.

Appellees do not contend that the Conservation Act, or any part of it, is unconstitutional. That such legislation is within the police power of the state, and is constitutional, see *VanGunten* v. *Worthley* (1927), 25 Ohio App. 496, 159 N. E. 326; *Los Angeles County* v. *Spencer* (1899), 126 Cal. 670, 59 Pac. 202, 77 Am. St. 217; *Los Angeles Berry Growers Co-op. Ass'n.* v. *Huntley* (1915), 84 Wash. 155, 146 Pac. 373, and *Blue* v. *Beach* (1900), 155 Ind. 121, 56 N. E. 89, 50 L. R. A. 64, 80 Am. St. 195.

Courts have uniformly held, and the law is well settled, that valid rules and regulations, when adopted by an administrative body in accordance with the provisions of the act by which the administrative body was created, are, in effect, a part of the statute. *Chicago, etc., R. Co.* v. *People* (1907), 136 Ill. App. 2. However, a rule, to be valid, must be reasonable and within the authority delegated by the statute.

In view of the facts as shown by the evidence in this case, there was an emergency which justified action on the part of the officers, and the rules and regulations embraced in the quarantine order were reasonable and well within the authority delegated by the statute.

We hold that, under the facts as set forth in the affirmative answer and established by the evidence, appellants had the right to go upon appellees' land and upon the growing crops for the purpose of enforcing the quarantine regulations which had been issued.

Reversed.

Neal, J., not participating.