**WHITLEY COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION, Appellant (Defendant Below),**

v.

**Roger E. LIPPINCOTT, Appellee (Plaintiff Below).**

**No. 4–1185A306.**

Court of Appeals of Indiana, Fourth District.

June 26, 1986.

Leonard E. Eilbacher, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for appellant.

Ronald J. Ehinger, Bert J. Dahm, Barrett, Barrett & McNagny, Fort Wayne, for appellee.

CONOVER, Judge.

Defendant-Appellant Whitley County Rural Electric Membership Corporation (REMC) appeals a jury verdict favoring Roger E. Lippincott (Lippincott), following REMC's termination of Lippincott's service for failure to pay his electric bill.

We reverse and remand.

## ISSUES

Because we reverse, we address only the following issue:

Whether the trial court erred in instructing the jury the rules and regulations of the Public Service Commission (PSC) are "mere evidence" and "not controlling", and thereafter imposing a greater standard of notice and due care upon REMC.

## FACTS

Lippincott is a homeowner in Whitley County. On June 8, 1981, he applied for and received REMC membership. Electric service was then furnished him pursuant to the REMC by-laws.

A bill for electric services was mailed to Lippincott at his recorded address on November 24, 1981. This bill became due on December 15. On December 17, a final and disconnect notice was sent to Lippincott's recorded address. It stated "payment must be in our office by 12/28/81 or service will be disconnected on 12/29/81." The bill was not paid and service was disconnected on December 29.

REMC could not determine whether Lippincott personally received the final and disconnect notice. Testimony at trial indicated Lippincott was on vacation when the final and disconnect notice was delivered. He did not return home until after the service had been disconnected.

On December 29, 1981, disconnection day, the temperature was never above 26°. REMC did not take these weather conditions into consideration before disconnecting the electric service. REMC, however, did comply fully with PSC rules and regulations, specifically 170 IAC 4-1-16, which does not require actual notice to a member prior to disconnecting service.

Following the disconnection, Lippincott's water pipes burst due to the cold weather. The total amount of damages to the house resulting from the burst water pipes, and for temporary living expenses was $15,-730.34. REMC moved for summary judgment. This motion was denied.

At trial, the court instructed the jury the rules and regulations of the PSC are "mere evidence" and are "not controlling", but simply constitute evidence "to be considered with all other evidence in the case."

Also, three employees of other utilities testified their respective companies would not cut off a customer's service in freezing weather without personal contact.

The jury found REMC negligent and awarded Lippincott $15,730.34. REMC appeals.

Other facts necessary to our decision appear below.

## DISCUSSIONS AND DECISION

### *Standard of Review*

REMC claims the trial court erred in submitting this case to the jury. It further claims the trial court erred by giving an instruction which imposed a greater standard of care upon it than the standard imposed by the PSC acting pursuant to its statutory authority. For these reasons the REMC asserts the jury's verdict was contrary to law.

In reviewing an allegation a jury verdict is contrary to law, the verdict will be set aside only when it is against the evidence, or there is a total lack of evidence, or where it is contrary to the uncontradicted evidence. *Plan-Tec, Inc. v. Wiggins* (1983), Ind.App., 443 N.E.2d 1212, 1217. *Sutton v. Roth, Wehrly, Heiny, Inc.* (1981), Ind. App., 418 N.E.2d 229, 232. Our inquiry is limited to determining whether the verdict is sustained by substantial evidence of probative value. *Riverside Insurance Co. v. Pedigo* (1982), Ind.App., 430 N.E.2d 796, 803.

### I. *PSC Rules and Regulations*

The evidence in this case is not in dispute. Lippincott stipulates REMC fully complied with the rules and regulations established by the PSC. Thus, the issue is whether the trial court can impose a higher standard of care on REMC than those imposed upon it by PSC regulations.

IND. CODE 8-1-2-34.5, the Public Service Commission Act of 1913, states in pertinent part:

(a) The Commission shall establish reasonable rules and regulations to govern the relations between public utilities and any or all classes of their customers. Those rules and regulations shall cover the following subjects:

(1) extension of service;

(2) extension of credit;

(3) deposits, including interest thereon;

(4) billing procedures;

(5) termination of service;

(6) complaints; and

(7) information and notice to customers of their rights under the rules.

REMC, a corporation created by the state, is subject to regulation by the PSC. IND. CODE 8-1-13-11 states in pertinent part:

A corporation created under the provisions of this chapter shall have power to do any and all acts or things necessary or convenient for carrying out the purpose for which it was formed, including, but not limited to:

(k) To levy and collect reasonable fees, rents, tolls and other charges for service rendered, subject to the approval of the public service commission as hereinabove provided.

Regarding conditions of membership, IND. CODE 8-1-13-9 states:

The corporate purpose of each corporation formed under this chapter shall be to render service to its members only, and no person shall become or remain a member of any local district corporation, defined in section 23 of this chapter, unless such person shall use energy supplied by such corporation and shall have complied with the terms and conditions in respect to membership contained in the bylaws of such corporation.

As a condition of membership, Lippincott agreed to pay his bill when it became due. He signed a form indicating he agreed to be bound by the rules and regulations of the REMC. (R. 113). One of these rules pertained to the termination of service. Pursuant to authority found in IC 8-1-1-3; IC 8-1-1-12; and, IC 8-1-2-4, the PSC

established rules and regulations for the disconnection/termination of service. These rules, applicable to the REMC, are found at 170 IAC 4–1–16. They state in pertinent part:

(e) Except as otherwise provided herein, electric service to any residential customer shall not be disconnected for a violation of any rule or regulation of a utility or for the non-payment of a bill, except after fourteen (14) days prior written notice to such customer by either:

(1) *mailing the notice to such residential customer at the address shown on the records of the public utility*; or,

(2) personal delivery of the notice to the residential customer or a responsible member of his household at the address shown on the records of the utility;

(3) no disconnect notice for non-payment may be rendered prior to the date on which the account becomes delinquent. (Emphasis supplied).

In *Citizens Gas & Coke Utility v. Wells* (1971), 150 Ind.App. 78, 275 N.E.2d 323, Judge Sullivan stated:

It is unquestioned that a utility can adopt reasonable rules and regulations governing its relationship with the customer and the service provided. *Richmond Nat. Gas Co. v. Clawson* (1900) 155 Ind. 659, 58 N.E. 1049. Failure by the customer to comply with such rules and regulations constitutes proper grounds for discontinuance of service. *Greenfield Gas Co. v. Trees* (1905) 165 Ind. 209, 75 N.E. 2; *Irvin v. Rushville, etc., Tel. Co.* (1903) 161 Ind. 524, 69 N.E. 258. 275 N.E.2d at 326.

### A. *Notice Prior to Termination*

■ In *Wells*, a customer claimed the utility was negligent in terminating his service. The key question there was whether the notice given to the customer was adequate under the circumstances. In analyzing what constitutes proper notice, Judge Sullivan stated:

Whatever its form, notice given by utilities to customers regarding property rights will meet due process requirements only where it is "sufficient." In *Mishawaka St. Joseph L. & T. Co. v. Neu, supra,* our Supreme Court defined notice as follows:

" 'Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained.' " 209 Ind. 433, 442, 196 N.E. 85, 89.

The principle last above quoted is perhaps placed in perspective by the following excerpts from 2 Pomeroy's Equity Jurisprudence (5th ed.), Sec. 596, et seq.:

"That the party has knowledge or information of facts sufficient to put him upon an inquiry has often been treated as peculiarly the characteristic of constructive notice. In truth, however, this test is equally applicable to every instance of actual notice inferred by process of rational deduction from circumstantial evidence.

\*　　\*　　\*　　\*　　\*　　\*

"The court or jury infers from the facts proved, by a process of rational deduction, *but without the aid of any legal presumption,* that such information was actually received." Sec. 596 at pages 613 and 615.

"This inference is not, in case of actual motice, a presumption, much less a conclusive presumption, of law; it may be defeated by proper evidence. If the party shows that he made the inquiry, and prosecuted it with reasonable diligence, but still failed to [make discovery], he thereby overcomes and destroys the inference. If, however, it appears that the party obtains knowledge or information of such facts, which are sufficient to put a prudent man upon inquiry, and which are of such a nature that the inquiry, *if prosecuted with reasonable diligence, would certainly lead to a discovery \* \*,* then the inference that he acquired

the information constituting actual notice is necessary and absolute; for this is only another mode of stating that the party was put upon inquiry; that he made the inquiry and arrived at the truth. Finally, if it appears that the party has knowledge or information of facts sufficient to put a prudent man upon inquiry, and that he wholly neglects to make any inquiry, or having begun it fails to prosecute it in a reasonable manner, then, also, the inference of actual notice is necessary and absolute." (Emphasis in original).

275 N.E.2d at 326–327.

The *Wells* court determined the utility had not given adequate notice to Wells. The Wells's had not lived at the address during the year where the utility repeatedly attempted to gain entrance to the premises for the purpose of checking a gas meter.

Here, on the contrary, Lippincott lived at the residence in question. The evidence is undisputed, REMC mailed its termination of service notice to that address. Further, there is no indication Lippincott did not receive his initial bill. Thus, Lippincott received all the notice to which he was entitled under the PSC regulations and the REMC's rules of membership.

### B. *Right to Terminate Service*

■ 112 A.L.R. 237 states:

As a general rule a public utility company or a municipality engaged in supplying gas or electricity to the public has the right to cut off service to a customer for non-payment by him of a just service bill, and may adopt and enforce, as a reasonable regulation for the conduct of its business, a rule that service supplied to a customer may be cut off because of his default in payment therefor.

In Indiana, the PSC by statutory authority establishes rules and regulations governing the conduct of business by the respective REMC's. A regulation within the authority granted the PSC by the legislature has the effect of law. See *Indiana State Board of Health v. Lakeland Dis-*

*posal Services, Inc.* (1984), Ind.App., 461 N.E.2d 1145, 1146; *Wallace v. Dohner* (1929), 89 Ind.App. 416, 165 N.E. 552.

Our foremost concern in construing statutes, and rules arising from statutory authority, is to determine and give effect to the true intent of the legislature. See *Frame v. South Bend Community School Corp.* (1985), Ind.App., 480 N.E.2d 261, 263.

The legislature's grant of authority to the PSC to establish rules and regulations for the termination of utility service is exclusive. A trial court cannot create new or different rules for such termination on its own. Thus, final instruction (no. 15) declaring the PSC's rules and regulations were "mere evidence" and "not controlling" is contrary to law. The REMC's instruction on the binding nature of PSC rules and regulations, tendered and refused by the trial court, correctly stated the law in this regard.

It is the trial court's duty to instruct the jury so it can fairly understand the law as it should be applied to the facts of the case. *Cartwright v. Harris* (1980), Ind.App., 400 N.E.2d 1192, 1194. It must be assumed an instruction which misstates the law has influenced the result at trial unless it appears from the evidence or record the verdict under a proper instruction could not have been different. *Zimmerman v. Moore* (1982), Ind.App., 441 N.E.2d 690, 693; *P–M Gas and Wash Co., Inc. v. Smith* (1978), 178 Ind.App. 457, 383 N.E.2d 357, 360. Had a correct instruction been given, the verdict here could have been different.

Reversed and remanded with instructions to enter judgment for defendant-appellant Whitley County Rural Electric Membership Corporation.

YOUNG, P.J., and MILLER, J., concur.