**SOUTH EASTERN INDIANA NATURAL GAS CO., INC., Appellant–Defendant,**

v.

**Frank and Donna INGRAM, Appellees–Plaintiffs.**

No. 69A01–9208–CV–263.

Court of Appeals of Indiana, First District.

July 19, 1993.

William H. Wolf, Michael R. Burrow, Wolf & Burrow, Greenfield, Stephen T. Taylor, Fitch & Taylor, Greensburg, for appellant-defendant.

John Emry, Franklin, for appellees-plaintiffs.

ROBERTSON, Judge.

South Eastern Indiana Natural Gas Co., Inc. (hereinafter referred to as South Eastern) brings this interlocutory appeal from an order denying its motion for judgment on the pleadings in an action for negligence brought by Frank and Donna Ingram (Ingrams).

We affirm.

The Ingrams allege in their complaint that, on January 10, 1982, South Eastern, a utility which supplied gas to them, experienced a partial interruption of service to its customers in the form of a reduction in line pressure.[1] Employees of South Eastern spent the early hours of January 10, 1982 responding to calls; however, at no time did South Eastern attempt to advise the Ingrams to switch to an emergency source of heat. The reduction in line pressure caused a loss of heat in the Ingrams' greenhouse which was not discovered by the Ingrams until 5:00 a.m. at which time the temperature in the greenhouse was zero degrees and the contents then a total loss. The Ingrams allege that South Eastern's negligence in not warning them to switch to an emergency source of heat was the proximate cause of their damages, including loss of inventory, profits, customers, labor, interest on borrowed money, and other damages.

In its motion for judgment on the pleadings, South Eastern contended both that the trial court lacked subject matter jurisdiction to hear the Ingrams' complaint because the Ingrams had failed to exhaust administrative remedies and that the legislature had vested exclusive jurisdiction to consider the Ingrams' claim in the Indiana Utility Regulatory Commission (IURC). In addition, South Eastern argued that the Ingrams had failed to state a claim upon which relief could be granted. The Ingrams moved to have their depositions published and urged the trial court to consider South Eastern's motion under Ind.Trial Rule 56. South Eastern objected. The court did not consider the depositions when ruling upon the motion for judgment on the pleadings.

 Accordingly, the standard for review of South Eastern's motion is the same as that applied to an Ind. Trial Rule 12(B)(6) motion made solely on the pleadings. The motion tests the sufficiency of the complaint to state a redressable claim, not the facts to support it. *Anderson v. Anderson* (1979), Ind.App., 399 N.E.2d 391, 405–6. The test to be applied is whether, in

---

1. We are informed by South Eastern in its brief that "[t]he reduction in pressure was caused by a malfunction of a gas regulator owned by the Texas Gas Transmission Corp., a supplier of natural gas to South Eastern Gas."

the light most favorable to the nonmovants and with every intendment regarded in their favor, the complaint is sufficient to constitute any valid claim. *Id.* (citing *State v. Rankin* (1973), 260 Ind. 228, 294 N.E.2d 604). The movant admits the facts pleaded. *Anderson,* 399 N.E.2d at 405–6.

At this late date, there can be no serious dispute that an Indiana circuit court has original subject matter jurisdiction to hear a claim sounding in negligence. See Ind. Code 33–4–4–3 ("The circuit court has original jurisdiction in all civil cases ... except where exclusive jurisdiction is conferred by law upon other courts of the same territorial jurisdiction"); *State v. Schuetter* (1987), Ind.App., 503 N.E.2d 418, 420. This grant of jurisdiction notwithstanding, South Eastern's position is that by granting the IURC the authority to investigate any "practice or act whatsoever affecting or relating to the service of any public utility" or a complaint that any service "is in any respect unreasonable, ... insufficient ... or inadequate," I.C. 8–1–2–54, and to issue an order "fix[ing] just and reasonable measurements, regulations, acts, practices or service to be furnished, imposed, observed and followed in the future in lieu of those found to be unjust ...," I.C. 8–1–2–69, the legislature has precluded an exercise of jurisdiction over the Ingrams' complaint by an Indiana trial court, requiring dismissal. South Eastern's contention raises two considerations: first, which if any of the legal or factual questions posed by the Ingrams' complaint are within the IURC's "exclusive" grant of authority, and second, does the existence of a collateral issue within the IURC's jurisdiction require the courts to defer consideration of the entire matter until the IURC has acted.

We begin our discussion with the basic proposition that the IURC derives its power solely from the legislature; if the power to act has not been conferred by statute, it does not exist. The legislature does not intend to grant other and greater authority than it has itself seen fit to exercise. *Citizens Action Coalition v. Northern Indiana Public Service Co.* (1985), Ind., 485 N.E.2d 610, 612, *cert. denied,* 476 U.S. 1137, 106 S.Ct. 2239, 90 L.Ed.2d 687; *Chicago & E.I.R. Co. v. Public Service Commission* (1943), 221 Ind. 592, 594, 49 N.E.2d 341, 341–2. Accordingly, any doubt about the existence of authority must be resolved against a finding of authority. *United Rural Electric v. Ind. & Michigan Electric Co.* (1990), Ind., 549 N.E.2d 1019, 1021.

Had the legislature explicitly stated that it intended to modify the common law of negligence and expressly provided that the existence and scope of a utility's duty in tort to private citizens is to be determined exclusively by the Public Service Commission Act as implemented by the IURC, the present dispute would not be before us. It has not so stated. Therefore, we must determine the legislature's intent from the specific grants of authority contained in Title 8 and the Act as a whole.

Indiana Code 8–1–2–107 provides a statutory remedy for injury sustained as a consequence of a neglect or violation of the regulatory scheme by a utility. This court has held that an action brought pursuant to this section for damages sustained as a result of a utility's discrimination in service or unreasonable preference must be preceded by a determination by the IURC that the utility's conduct is unlawful. *Indiana Bell Telephone Co. v. Friedland* (1978), 175 Ind.App. 622, 654, 373 N.E.2d 344, 352, *cert. denied,* 440 U.S. 916, 99 S.Ct. 1233, 59 L.Ed.2d 465. But, neither I.C. 8–1–2–107 nor *Friedland* speaks to the violation of common law duties by a public utility. The Indiana Supreme Court has held that the legislature did not intend to displace the common law with respect to duties by enacting the predecessor to this section. *Trustees of Jennie De Pauw Memorial Methodist Episcopal Church v. New Albany Waterworks* (1923), 193 Ind. 368, 140 N.E. 540. Indiana Code 8–1–2–107 therefore grants the IURC no authority to determine the underlying facts or liability of a utility to a private litigant in a dispute which does not involve a neglect or violation of the regulatory scheme.

■ The legislature has explicitly given the IURC the authority, upon its own motion, I.C. 8–1–2–58, or when the issue is otherwise properly presented to it, to investigate into the "service" provided by a regulated utility, to find facts based upon the evidence before it, and to prospectively rectify any perceived inadequacies in the utility's practices or the regulatory scheme. I.C. 8–1–2–54, 69. Inherent in this grant of power is the implicit power and authority to do that which is necessary to effectuate the regulatory scheme. *Northern Indiana Public Service Co. v. Citizens Action Coalition* (1989), Ind., 548 N.E.2d 153, 158, *cert. denied,* 476 U.S. 1137, 106 S.Ct. 2239, 90 L.Ed.2d 687.

■ The courts of this state have already concluded that the IURC does not possess the power to make declaratory rulings in the manner contemplated by the Declaratory Judgment Act. *U.S. Steel Corp. v. Northern Indiana Public Service Co.* (1985), Ind.App., 482 N.E.2d 501, 506, *trans. denied.* The IURC's duty is to enter orders based upon impartial findings of fact. It has not been empowered to enter judgments which determine the parties' rights, status or legal relationship, even when the subject matter of the determination appears to fall within the IURC's broad grant of authority. *National Rural Utilities Cooperative Finance Corp. v. Public Service Commission of Indiana* (1990), Ind., 552 N.E.2d 23, 25 (summarily affirming *National Rural Utilities Cooperative Finance Corp. v. Public Service Commission of Indiana* (1988), Ind.App., 528 N.E.2d 95, 98); *Office of Utility Consumer Counselor v. Northern Indiana Public Service Co.* (1989), Ind.App., 538 N.E.2d 957, 959, *trans. denied; Kentucky-Indiana Municipal Power Association v. Public Service Commission of Indiana* (1979), 181 Ind.App. 639, 645, 393 N.E.2d 776, 780. Neither the Ingrams nor South Eastern could therefore file a petition under I.C. 8–1–2–54 to obtain a declaration of South Eastern's liability to the Ingrams.

■ Nonetheless, by empowering the IURC to determine the reasonableness and adequacy of South Eastern's service to its customers, the IURC appears to possess the inherent authority to investigate into whether South Eastern used reasonable care in the provision of service and whether some other action was warranted under the circumstances. While an inquiry into the reasonableness of the service provided by South Eastern ultimately may be necessary to effectuate the regulatory scheme, the results of such an investigation can have no binding effect upon the judiciary. The IURC possesses only such power as the legislature can constitutionally confer upon it.

■ The Indiana Constitution expressly reposes the power to find facts in the jury and guarantees in Art. I, § 20 that "[i]n all civil cases, the right of trial by jury shall remain inviolate.[2] *Schembri v. Shearer* (1935), 208 Ind. 97, 194 N.E. 615. The constitutional provision means that the substantial elements and incidents, which pertained to a trial by jury at common law, shall not be altered or changed by the legislature or the courts and are preserved in substance as they existed at common law. *Hayworth v. Bromwell* (1959), 239 Ind. 430, 437, 158 N.E.2d 285, 288. Analogously, the Seventh Amendment of the federal Constitution prevents Congress from depriving a litigant of a jury trial in a legal action before a tribunal customarily utilizing a jury as its fact-finding arm. *Atlas Roofing Co. v. Occupational Safety & Health Review Commission* (1977), 430 U.S. 442, 451, 458–9 n. 7, 97 S.Ct. 1261, 1267, 1267 n. 7, 51 L.Ed.2d 464. Hence, just as the General Assembly may not directly withdraw the right to a jury in the present cause by legislation, *Schembri,* 208

---

2. The right to a trial by jury is fully protected in all causes where it existed in 1851 when the Constitution was adopted. *Hiatt v. Yergin* (1972), 152 Ind.App. 497, 514–5, 284 N.E.2d 834, 844, *overruled in part,* 411 N.E.2d 653. An action in tort for property damage is such a cause. *City of Terre Haute v. Deckard* (1962),

243 Ind. 289, 293, 183 N.E.2d 815, 817; *Allen v. Anderson* (1877), 57 Ind. 388, 389 (Constitution's "civil cases" means all civil actions at common law, including action on the case). Consequently, the Ingrams are entitled to a jury trial of their negligence claim if they so choose.

Ind. at 99, 194 N.E. 615; *Hiatt,* 284 N.E.2d at 844, it may not impair the right by substituting the IURC for the jury as the court's fact-finding arm.

▪ Plainly, the legislature never intended an unconstitutional delegation of power. Whatever the factual overlap between an investigation into the reasonableness and adequacy of a particular utility's service and proof of the breach of a common law duty, the IURC is not empowered to make factual findings and rulings which are ultimately binding upon a jury. This want of power means that the issue of duty is never "exclusively" before the IURC, when the utility is alleged to have neglected to act as required of it by the common law rather than the Act or its implementing regulations, because the issues of breach of duty, proximate cause and damages are not ever directly before the IURC.

▪ Nonetheless, the operative facts presented by the Ingrams' complaint do show a basis for an exercise of the IURC's investigatory jurisdiction. We therefore come to the second question referred to earlier: mindful of the fact that the IURC can, upon its own motion, exercise its jurisdiction and investigate into the service provided by South Eastern, must the judiciary dismiss the complaint because the Ingrams did not go first to the IURC for a ruling

upon the collateral matter of the adequacy of South Eastern's service? We addressed this precise question last in *Public Service Indiana, Inc. v. Nichols,* 494 N.E.2d 349, in which we held that a plaintiff raising a common law negligence claim need not exhaust administrative remedies.[3] *See also, Indiana Telephone Corp. v. Indiana Bell Telephone Co.* (1976), 171 Ind.App. 616, 358 N.E.2d 218, *modified,* 171 Ind.App. 616, 360 N.E.2d 610 (construction of and breach of contract claims proper matters for judicial determination without resort to administrative agency); *Citizens Gas & Coke Utility v. Sloan* (1964), 136 Ind.App. 297, 196 N.E.2d 290 (fraud and rescission of contracts proper for judicial branch of government). The *Nichols* court's analysis and application of the exhaustion of remedies doctrine to negligence and strict liability claims against a public utility governs this case. We would add to the rationale of *Nichols* the following points.

▪ First, our case law dictates deference to the jurisdiction of the IURC only where a remedy is available from the IURC which contemplates the determination of the precise issue upon which further relief in the trial court depends, not the determination of collateral issues. *See Friedland,* 175 Ind.App. at 654, 373 N.E.2d at 352.[4]

---

3. The dissent acknowledges at least implicitly the precedential effect of *Nichols,* 494 N.E.2d 349, but distinguishes the Nichols' allegation that "PSI had breached its duty to provide reasonable and adequate services by permitting stray voltage to flow from PSI lines to the ground and onto the Nichols' dairy farm" on the ground that *Nichols* only remotely dealt with questions of adequate service because there was no question that service was provided at an adequate level. The distinction is merely one of semantics and fails to take into account the specific allegations of the Nichols' complaint or the apparent breadth of the IURC's authority. " 'Service' is used ... in its broadest and most inclusive sense" and includes the "accommodation afforded customers." The IURC's authority expressly extends to service which is *"in any respect* unreasonable, ... insufficient ... or inadequate ..." (Emphasis supplied.)

4. The *Friedland* decision applies the doctrine of primary jurisdiction rather than the requirement of exhaustion of remedies as a means of analyzing the necessity for deference. The doc-

trine of primary jurisdiction is not well developed in Indiana, but we agree that it may be a better approach. When the doctrine of primary jurisdiction applies, the court retains jurisdiction over the action while the agency addresses the question within its jurisdiction. 2 Koch, C. *Administrative Law & Practice* 117 (1985). The requirement of exhaustion, on the other hand, forces a dismissal of the action. Review is circumscribed to a consideration of whether the agency acted within the scope of its authority, whether the agency's findings are supported by the evidence and whether the decision is contrary to law. *Id.* South Eastern argues that the exhaustion of administrative remedies requirement compels dismissal. Given the consequences of such a conclusion, we must address that argument.

The dissent suggests that application of the primary jurisdiction doctrine dictates a dismissal because part of the case is within the IURC's exclusive jurisdiction. However, "[o]nly where the original claim as pleaded can be seen as necessarily requiring a decision by the Commis-

This basic principle distinguishes all three of the decisions relied upon by South Eastern, *Haggard v. PSI Energy, Inc.* (1991), Ind.App., 575 N.E.2d 687, *trans. dismissed; Indiana Forge and Machine Co., Inc. v. Northern Indiana Public Service Co.*, 396 N.E.2d 910 (1979), and *Friedland*, 373 N.E.2d 344, in support of its assertion that the IURC must first be given an opportunity to investigate and provide a remedy. These cases involve, at least in part, claims for damages *arising out of and dependent upon* the validity and application of rules contained in the utilities' tariffs, the approval and regulation of which is within the exclusive jurisdiction of the IURC. See *Haggard*, 575 N.E.2d at 687 (State law claims arising out of denial of service pursuant to retail tariff); *Indiana Forge*, 396 N.E.2d 910 (Consolidated appeal, of orders on emergency petitions and complaint for declaratory and injunctive relief and damages caused by implementation of allegedly unreasonable and arbitrary containment policy); *Friedland*, 373 N.E.2d 344 (Class action for declaratory and injunctive relief and damages based upon claims discrimination in rate tariff arbitrary and unreasonable, applied in arbitrary and discriminatory manner or wrongfully applied). The Ingrams make no challenge to any provision in South Eastern's tariff. Indeed, there is no indication in the record that any provision in the tariff or even an IURC regulation is applicable to South Eastern's allegedly negligent practice.

But, more precisely, the action brought by the Ingrams ultimately "does not turn on a determination of the reasonableness of a challenged industry practice—a determination that could be facilitated by an informed evaluation of the economics or technology of the regulated industry," *Nader v. Allegheny Airlines, Inc.* (1976), 426 U.S. 290, 306, 96 S.Ct. 1978, 1988, 48 L.Ed.2d 643, but upon the test of reasonable care arising from common law—a wholly distinct standard dependent largely upon the circumstances of the case and upon what a jury may decide a reasonably prudent person would have done under the circumstances.

■ It takes no special expertise to resolve the negligence question. To the contrary, questions of duty, breach of duty, causation, and injury have traditionally fallen within the competence of the judiciary and its fact-finding jury. The law is the province of the judiciary under our constitutional system of government. *Board of Trustees of PERF v. Miller* (1988), Ind., 519 N.E.2d 732, 733. Deference is not granted the agency's legal conclusion. *Id.* An IURC determination of "the adequacy of service" is thus unnecessary because it is not the question the court or jury must address and because, regardless of the facts and law found by the agency, neither the jury nor the court will be bound by the IURC's determinations.

Second, neither the prospective discretionary "fixing" authorized by I.C. 8–1–2–69 nor the internal complaint procedure offered by the IURC can provide the Ingrams *any* relief. The "remedy" is no remedy at all for a common law tort and in this respect, it is plainly inadequate. *Cf. McCarthy v. Madigan*, (1992), — U.S. ——, 112 S.Ct. 1081, 117 L.Ed.2d 291 (federal prisoner need not resort to internal grievance procedure before he may initiate *Bivens* suit for damages; all justices concur, fact that grievance procedure cannot provide award of damages means administrative remedy furnishes no effective remedy at all).

sion should the plaintiff be compelled to go first to the Commission. Jaffe, L., *Judicial Control of Administrative Action* 138 (1965). *Accord Indiana Telephone Corp.,* 171 Ind.App. 616, 358 N.E.2d 218. A fortiori, there should not be a dismissal (if dismissal would be prejudicial) where the agency is without power to give the relief to which a party may be entitled under the law governing the cause of action." Jaffe, *Judicial Control of Administrative Action* 138. Assuming then that application of the primary

jurisdiction doctrine points toward deference by the courts, an analysis which entails more than simply looking to see whether "any part" of an action is within the exclusive jurisdiction of the agency, *cf. e.g. Nader v. Allegheny Airlines, Inc.* (1976), 426 U.S. 290, 304–5, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643; *Massa v. Peabody Coal Co.* (S.D.Ind., 1988), 698 F.Supp. 1446, the correct result would be for the court to retain jurisdiction pending a decision by the IURC, not to dismiss the action.

■ Third, a statutory procedure for review *excludes* common law remedies only to the extent that the statutory provisions are adequate to protect and preserve substantive rights guaranteed by the Constitution, statute or general principles of law. *Public Service Commission v. City of Indianapolis* (1956), 235 Ind. 70, 131 N.E.2d 308; *Indiana Forge & Machine Co. v. Northern Indiana Public Service Co.* (1979), Ind.App., 396 N.E.2d 910, 913. Ultimately, if the jury is not permitted to reject the IURC's determination and factual findings on the reasonableness and adequacy of South Eastern's service, the very substance of the right to jury trial protected by the Indiana Constitution will have been impaired. *Cf. Johnson v. St. Vincent's Hospital, Inc.* (1980), 273 Ind. 374, 404 N.E.2d 585 (Opinion of medical review panel only evidence). This concern is not illusory. *See e.g. Whitley County Rural Electric Membership Corp. v. Lippincott* (1986), Ind.App., 493 N.E.2d 1323.

For these reasons, we conclude that the trial court correctly determined that the IURC did not have exclusive jurisdiction over the issues raised by the Ingrams' complaint. Dismissal of the complaint was not warranted because of the Ingrams' purported failure to exhaust administrative remedies.

■ Alternatively, South Eastern argues that the Ingrams have failed to state a claim upon which relief can be granted because it owed the Ingrams no duty of reasonable care under the circumstances. In analyzing this issue, we may be concerned only with the sufficiency of the complaint to state a claim, not the facts which support it. Only where it appears to a certainty from the face of the complaint that under no set of facts could the plaintiff be granted relief is dismissal appropriate. *Rankin*, 294 N.E.2d 604, 606. Notice pleading means that a plaintiff essentially need plead only the operative facts involved in the litigation. *Id.* Again, the Ingrams allege that the proximate cause of their injury was South Eastern's negligence in not warning them to switch to an emergency source of heat.

■ Duties which may be the basis of a negligence action may arise by statute or by operation of law. *State v. Morgan* (1982), Ind.App., 432 N.E.2d 59, 62. Indiana Code 8–1–2–4 imposes upon South Eastern a statutory duty to furnish reasonably adequate service and facilities. *See Indiana Bell Telephone Co. v. O'Bryan* (1980), Ind.App., 408 N.E.2d 178, 181. But apart from this statutory duty, the courts of this state have long recognized a common law duty on the part of a public utility to conform its conduct for the benefit of the public generally, its customers, and third persons who might reasonably be foreseen to be affected by the utility's provision of service.

■ The parties in the present case occupy the contractual relationship of buyer and seller. All applicable law in force at the time the agreement was made impliedly forms a part of the agreement without any statement to that effect. *Strauss Veal Feeds, Inc. v. Mead & Hunt, Inc.* (1989), Ind.App., 538 N.E.2d 299, 302, *trans. denied.* Hence, South Eastern is required both by statute and by contract to provide the Ingrams with reasonably adequate service and has a duty to conform its conduct to that required of it by the IURC through its regulations.

■ However, the source of South Eastern's common law duty is not solely the contractual relation. Public utilities that have received from public authorities franchises which provide for the accommodation of the general public in return owe a duty to the public as well as all individuals of that public who, in compliance with established customs or rules, make a demand for the beneficial use of the utilities' privileges and advantages. *Coy v. Indianapolis Gas Co.* (1897), 146 Ind. 655, 659, 46 N.E. 17, 19. Thus, it was held in *Coy v. Indianapolis Gas Co.* that a gas utility's failure to supply its customer with gas for fuel promptly and without reserve, gave rise to an actionable claim of breach of duty in tort, a duty imposed by law apart from and in addition to any duty under the contract. *Id.* at 662, 46 N.E. 17. The duty

of a utility to use reasonable care in the distribution of gas is imposed by law for a second reason: the utility conveys a dangerous instrumentality. See *Southern Indiana Gas Co. v. Tyner* (1912), 49 Ind. App. 475, 97 N.E. 580.

Undeniably, the contours of this duty have already been shaped by the courts of this state. *Coy v. Indianapolis Gas Co.* holds that the nonperformance of a contract to supply by the utility is an actionable wrong. In *Public Service Comm'n v. Panhandle Eastern Pipeline Co.* (1947), 224 Ind. 662, 686, 71 N.E.2d 117, *affirmed,* 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128, the duty of the public utility required that it serve on reasonable terms all those who desire the service it renders. In *Indiana Natural & Illuminating Gas Co. v. Long* (1901), 27 Ind.App. 219, 59 N.E. 410, this court held that the common law duty of reasonable care required a gas utility to furnish natural gas to patrons for domestic use at a safe, uniform pressure, to institute and maintain an efficient system of oversight to ensure that the pressure continued to be safe and uniform, and to furnish a prompt remedy for accidents and defects.[5] *Roberts v. Indiana Gas & Water Co.* (1966), 140 Ind.App. 409, 218 N.E.2d 556, *on rehearing,* 140 Ind.App. 409, 221 N.E.2d 693, stands for the proposition that the duty to produce and distribute gas in a reasonably safe and prudent manner required distributors to warn consumers by odorizing the gas they supply. There are many other cases recognizing and applying this duty. *See also, The Richmond Gas Co. v. Baker* (1897), 146 Ind. 600, 604, 45 N.E. 1049 (Gas utility owed duty to all persons who might be injured to use ordinary and adequate care in delivering substance to residence); *City of Indianapolis v. Walker* (1960), 132 Ind.App. 283, 168 N.E.2d 228 (Gas utility must exercise ordinary care in maintenance of line); *Westfield Gas Corp. v. Hill* (1960), 131 Ind.App. 558, 169 N.E.2d 726 (Duty to use reasonable care required gas utility to prevent

escape of gas); *Tyner,* 49 Ind.App. at 484, 97 N.E. at 585 (Gas company owed duty to customers, patrons and occupants of buildings where it supplied agency to use care commensurate with danger to which it exposed persons or property).

█ Based upon these decisions, the allegations of the Ingrams' complaint state a claim upon which relief can be granted. The Ingrams were customers of South Eastern who relied upon it as a public utility which handles a potentially dangerous agency to continuously supply gas at a constant pressure, exercise oversight or furnish a prompt remedy. Although the alleged consequences of South Eastern's breach of duty are not the same as in *Coy, Long,* or *Roberts,* the imposition of a duty should not depend upon the nature of damages which flow as a result of its breach. Just as much pain and anguish can result from suffering a devastating economic loss as for physical injury. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 996.

█ South Eastern treats the duty alleged in the Ingrams' complaint as if it poses a novel question, urging us to reevaluate its obligation under the balancing test employed by the Indiana Supreme Court in *Jarvis,* 575 N.E.2d 992. The dissent would adopt this approach. We are bound by the principle of stare decisis not to do so. Although the cases cited above do not explicitly weigh the three considerations Indiana law now openly recognizes factor into the legal equation of duty, *cf. Gariup Construction Co. v. Foster* (1988), Ind., 519 N.E.2d 1224, 1227, these holdings have implicitly balanced public policy concerns for nearly one hundred years: the interests of a customer plaintiff are entitled to legal protection against a public utility's conduct when it is reasonably foreseeable that the plaintiff will be injured by the utility's acts or omissions. We cannot simply ignore these cases or the import of their holdings.

---

5. In a factually similar case, a municipal water utility was found to be "liable to the same extent as a private citizen for tortious injury to private rights" where the utility failed to supply water to a greenhouse at the agreed upon pressure for a number of days. *City of Huntington v. Morgen* (1928), 90 Ind.App. 573, 162 N.E. 255.

The dissent reasons that the Ingrams' complaint does not present an independent common law negligence claim because the relationship here is that of a public utility and its customers and the IURC has not determined within its regulatory framework that a public utility's responsibility to furnish reasonably adequate service and facilities includes a duty to warn its customers when an unexpected reduction in line pressure and interruption in service occurs. The dissent is either distinguishing a utility's duty to use reasonable care from a duty to warn or he believes that a public utility's common law duty of reasonable care is precisely co-extensive with its contractual or statutory duties.[6] Our response is two-fold.

▮▮▮ First, in Indiana, there are no degrees of negligence or duty. *Neal v. Home Builders, Inc.* (1952), 232 Ind. 160, 169, 111 N.E.2d 280, 285. The law imposes but one common law duty and that duty is to use due care. *Id.* (citing *Union Traction Co. v. Berry* (1919), 188 Ind. 514, 121 N.E. 655). The duty is the same for all relations, without regard to the facts of the case. *Id.* It includes the so-called duty to warn. See *Union Traction Co. v. Berry,* 188 Ind. 514, 121 N.E. 655 (duty of carrier to use reasonable care for the protection of its passengers includes any duty to warn of imminent danger on bridge crossing). Consequently, if a duty to use due care exists, it is for the jury to consider the conditions and circumstances disclosed by the evidence and determine the actions, precautions, or course of conduct which should have been pursued in order to measure up to the duty which the law imposes. *Union Traction Co.,* 188 Ind. at 521, 121 N.E. at 657.

▮▮▮ Second, the dissent points out, there are no IURC rules addressing the breach of duty *alleged* by the Ingrams. The contract between the utility and its consumer therefore did not constrict the utility's duty. And, while the IURC's authority is sufficiently broad to empower it to promulgate rules governing a gas utility's conduct in this instance, the IURC cannot relieve a utility from liability under the law of negligence as it exists in Indiana by any rule it may adopt. *Indianapolis Water Co. v. Schoenemann* (1939), 107 Ind.App. 308, 20 N.E.2d 671. If the utility owes a duty to the public under the common law, that duty cannot be abrogated or set aside by a regulatory order adopted by the IURC. *Id.* This is so because the IURC has no legislative authority. *Id.* But cf. Lippincott, *493 N.E.2d 1323.*

▮▮▮ Without question, the General Assembly has the power to abrogate or modify the common law of tort, *Dague v. Piper Aircraft Co.* (1981), 275 Ind. 520, 529, 418 N.E.2d 207, 213, but when it fails to do so either in express terms or by unmistakable implication, we must presume that the legislature is aware of the common law and does not intend any change. *State Farm Fire & Casualty Co. v. Structo Division, King Seely Thermos Co.* (1989), Ind., 540 N.E.2d 597, 598. The legislature's enactment of I.C. 8–1–2–107 was not intended to supplant the common law remedy or the law governing duties but merely to codify it. *New Albany Waterworks,* 193 Ind. 368, 140 N.E. 540.

The trial court concluded that the Ingrams had stated a claim upon which relief could be granted. We agree with this conclusion. Accordingly, we conclude that the trial court properly denied South Eastern's motion for judgment on the pleadings and affirm the judgment.

Judgment affirmed.

SHARPNACK, C.J., concurs.

NAJAM, J., dissents with separate opinion.

---

**6.** The dissent also looks to the parties' briefs to the "fact" that the interruption in utility service was not caused by any act or omission of South Eastern to conclude that it would be incongruous to hold South Eastern to a duty to warn when, by IURC regulation, it is not responsible for variations in line pressure due to conditions beyond its control. On review of a T.R. 12(B)(6) motion, we are not concerned with the facts, or defenses of third party intervention, but the sufficiency of the complaint.

NAJAM, Judge, dissenting.

I respectfully dissent. South Eastern is a public utility regulated by the Indiana Utility Regulatory Commission ("IURC" or "Commission") pursuant to Indiana Code § 8–1–2–1, *et seq.* The question presented falls squarely within the primary jurisdiction of the IURC, and it is for the IURC to determine, in the first instance, whether in order "to furnish reasonably adequate service and facilities" a public utility is required to warn its customers when an unexpected interruption in gas service occurs. *See* IND. CODE § 8–1–2–4. Further, even if the trial court had primary subject matter jurisdiction, South Eastern was entitled to judgment on its motion to dismiss for failure to state a claim because South Eastern had no duty to warn the Ingrams as a matter of law.

### *Primary Jurisdiction*

Both the Ingrams and the majority contend that the Ingrams' complaint presents an ordinary negligence claim, a simple action in tort for property damage, and that the elements of duty and reasonable care are common law questions which fall outside of the IURC's primary jurisdiction. The majority reasons that resort to the IURC would be futile and, hence, is not required because the IURC cannot provide the Ingrams with the jury trial to which they are entitled or damages to compensate them for their injury. However, the majority avoids the real issue, which is whether a trial court or the IURC should first determine whether existing IURC rules ensure adequate service to utility customers. I believe that task is committed initially to the IURC for a determination of the reasonableness of IURC policy, followed by action in the trial court consistent with the IURC's determination.[1]

Throughout these proceedings, the parties have described the event triggering this action as a "reduction in line pressure." The Ingrams do not allege in their complaint that South Eastern caused this reduction in line pressure. Record at 4. The parties also agree in their statements of fact and arguments on appeal that there is no allegation that South Eastern caused the interruption of the Ingrams' gas service. *See* Appellant's Brief at 3 and Appellees' Brief at 1 and 2.

The IURC has previously defined adequate service in this context. An IURC rule provides that "if it can be shown that variations in gas pressure occurring are due to conditions beyond the control of the utility," the utility "shall not be deemed to have violated" the rule that gas pressure shall not vary by more than fifty percent above or below normal pressure. IND.AD-MIN.CODE tit. 170, r. 5–1–21(A) and (B) (1992). Thus, the IURC has made a judgment and determined, within the regulatory framework, what constitutes adequate service and what is reasonable utility practice when, as in this case, a customer experiences a reduction in gas line pressure.

When a claim includes issues within the competence of both an administrative agency and the courts, the doctrine of primary jurisdiction provides that the agency should first determine those issues within its regulatory authority. *See Shlens v. Egnatz* (1987), Ind.App., 508 N.E.2d 44, 46, *trans. denied.* The test for primary jurisdiction is not whether some parts of the case are within the exclusive jurisdiction of the courts; rather, the test is whether some parts of the case are within the exclusive jurisdiction of the agency. *Indiana Forge and Machine Co. v. Northern Indiana Public Service Co.* (1979), Ind.App., 396 N.E.2d 910, 913 (quoting 3 Davis, *Administrative Law Treatise* § 19.07, at 39 (1958)). The primary jurisdiction doctrine applies when a claim is cognizable in a court but adjudication of the claim requires adjudication of issues under a regulatory scheme which are within the special competence and expertise of an administrative body. *Hansen v. Norfolk and Western Railway Co.* (7th Cir.1982), 689 F.2d 707, 711. Under those circumstances, the court action is

---

**1.** Any party who brings a complaint before the IURC and is dissatisfied with the Commission's final decision may appeal that decision directly to this court for judicial review, pursuant to Indiana Code § 8–1–3–1.

not dismissed but suspended pending referral of such issues for determination by the administrative body. *Id.*

In the seminal decision recognizing the doctrine of primary jurisdiction, the Supreme Court noted that a fundamental concern of the doctrine is to promote consistency and uniformity in administrative policy. *See Texas & Pacific Railway Co. v. Abilene Cotton Oil Co.* (1907), 204 U.S. 426, 440–41, 27 S.Ct. 350, 355, 51 L.Ed. 553, 559. Hence, the primary jurisdiction doctrine is applied where the reasonableness of administrative standards and practices is at issue. *See Massa v. Peabody Coal Co.* (S.D.Ind.1988), 698 F.Supp. 1446, 1451. Court deference to administrative expertise is particularly appropriate in regulated industries where a systematic and interrelated body of factfinding and policymaking require uniformity to avoid conflicting commands from the agency and the courts. *See* Alfred C. Aman, Jr. and William T. Mayton, *Administrative Law* 424 (1993); Louis L. Jaffe, *Judicial Control of Administrative Action* 133 (1965).

Notice to a customer when an interruption in utility service occurs is a practice or act affecting or relating to that service. Thus, while the Ingrams characterize their

claim as a common law negligence action, they actually challenge agency policy concerning the adequacy of utility service provided by South Eastern, a matter which the IURC regulates.[2] Subject-matter jurisdiction is controlled by the nature of the claim presented, not by the manner of pleading. *Shlens*, 508 N.E.2d at 46; *Public Service Indiana, Inc. v. Nichols* (1986), Ind.App., 494 N.E.2d 349, 353. For purposes of primary jurisdiction analysis, the mere fact that the plaintiff phrases his claim in one manner instead of another does not conclusively determine jurisdiction; the applicability of the primary jurisdiction doctrine does not rely upon the whim of the pleader. *United States v. Western Pacific Railroad Co.* (1956), 352 U.S. 59, 68–69, 77 S.Ct. 161, 167, 1 L.Ed.2d 126, 135.

An IURC rule expressly provides that a public utility does not violate the minimum allowable variations in gas pressure when such variations are due to conditions beyond the control of the utility. *See* 170 IAC 5-1-21(B). While IURC rules require notice to customers under other circumstances, IURC rules do not require a public utility to provide notice of an unexpected reduction in gas pressure.[3] The IURC has

---

**2.** Our legislature has specifically granted the IURC the power to regulate matters addressing the adequacy of service: "The Commission shall establish reasonable rules and regulations to govern the relation between public utilities and any or all classes of its customers." IND.CODE § 8-1-2-34.5(a). Further,

"Upon a complaint made against any public utility by any mercantile, agricultural or manufacturing society by any body politic or municipal organization or by ten (10) persons, firms, corporations or associations, or ten (10) complainants of all or any of the aforementioned classes, or by any public utility, that any of the rates, tolls, charges or schedules or any joint rate or rates in which such petitioner is directly interested are in any respect unreasonable or unjustly discriminatory, or that any regulation, measurement, *practice or act whatsoever affecting or relating to the service of any public utility, or any service in connection therewith, is in any respect unreasonable, unsafe, insufficient or unjustly discriminatory, or that any service is inadequate or can not be obtained,* the *[C]ommission shall proceed,* with or without notice, to make such investigation as it may deem necessary or convenient. *But no order affect-*

*ing said rates, tolls, charges, schedules, regulations, measurements, practice or act, complained of, shall be entered by the [C]ommission without a formal hearing.*"

IND.CODE § 8-1-2-54 (emphases added). Following an investigation of a complaint made against a utility, the Commission is authorized to issue orders correcting any unreasonable, insufficient or inadequate practice or service. *See* IND.CODE § 8-1-2-69. As the majority correctly observes, inherent in that grant of authority is the implicit power to do that which is necessary to effectuate the regulatory scheme. *See Northern Indiana Public Service Co. v. Citizens Action Coalition* (1989), Ind., 548 N.E.2d 153, 158, *cert. denied,* 476 U.S. 1137, 106 S.Ct. 2239, 90 L.Ed.2d 687.

**3.** Unlike electric and water utilities, the IURC does not require gas utilities to provide customers with notice even when the utility *intentionally* interrupts gas service. *Compare* IND.ADMIN.CODE tit. 170, r. 5-1-23 (gas utilities) (1992) *with* IND.ADMIN.CODE tit. 170, r. 4-1-23 (1992) (electric utilities) and IND.ADMIN.CODE tit. 170, r. 6-1-22 (1992) (water utilities) (utilities shall notify, "so far as possible," those customers most seriously affected by an

primary jurisdiction to determine whether its standards ensure adequate service for customers under those circumstances and whether the standards are consistent with IURC policy. In contrast, if the IURC had promulgated a rule requiring notice to customers under these circumstances, a claim challenging the sufficiency of that notice rather than the reasonableness of the practice itself could properly be decided by a trial court or jury applying settled principles of tort law. *See Nader v. Allegheny Airlines, Inc.* (1976), 426 U.S. 290, 306 n. 14, 96 S.Ct. 1978, 1988 n. 14, 48 L.Ed.2d 643, 656 n. 14; *see also Massa*, 698 F.Supp. at 1451 (primary jurisdiction doctrine applies where issue challenges reasonableness of agency standards or practices, not compliance with standards); *Citizens Gas and Coke Utility v. Wells* (1971), 150 Ind. App. 78, 84, 275 N.E.2d 323, 327 (trial court has subject matter jurisdiction to hear complaint alleging negligent violation of rule requiring written notice to customer before shutting off gas service). The Ingrams' action does not challenge the negligent violation of a rule but the reasonableness of IURC policy which does not require notice to customers when gas service is unexpectedly interrupted. *See Nader*, 426 U.S. at 305, 96 S.Ct. at 1987, 48 L.Ed.2d at 656. Primary jurisdiction to decide the Ingrams' challenge is vested in the IURC.

I disagree with the majority's contention that the Ingrams' action does not require an informed evaluation of the economics or technology of the industry. *See id.* The majority's position relies, in part, on the fact that the Ingrams do not couch their complaint in terms of an attack on the validity or application of the IURC tariff. However, a tariff is not an abstraction. *Western Pacific*, 352 U.S. at 66, 77 S.Ct. at 167, 1 L.Ed.2d at 133. It embodies an analysis of technical cost-allocation and accounting problems which must be solved in setting the tariff initially. *Id.* "Courts which do not make rates cannot know with exactitude the factors which go into the rate-making process." *Id.* at 68, 77 S.Ct. at 167, 1 L.Ed.2d at 133.

A determination that a utility has a duty to warn its customers when an unexpected interruption in service occurs will have a direct impact on the cost of service and the economics of utility rates, which a trial court has no obligation or expertise to consider. The impact on rates which may result from the imposition of tort liability in this context is more than "merely incidental." *Nader*, 426 U.S. at 300, 96 S.Ct. at 1985, 48 L.Ed.2d at 652. The majority's opinion has broad ramifications because tort liability under these circumstances could open wide the floodgates of litigation by utility customers whenever an unexpected interruption in utility service results, for example, in the loss of perishables or has an adverse impact on a business operation.

This case also presents the kind of broad policy question which calls for a consistent and uniform rule of general application promulgated by the regulatory authority. Indeed, the need for a uniform IURC policy governing notice to customers in the event of unexpected interruptions in utility service is paramount and weighs heavily in favor of primary jurisdiction in the IURC. When there is no administrative rule or regulation in place which regulates the challenged practice, court action will neither threaten the uniformity of, nor create an inconsistency in, the regulatory framework. *See id.* at 304, 96 S.Ct. at 1987, 48 L.Ed.2d at 656; Aman & Mayton, *supra*, at 430 n. 32. Here, however, the IURC has already defined reasonable gas utility practice when reductions in gas pressure occur due to conditions beyond the control of the utility. *See* 170 IAC 5-1-21. The majority approves a result which may subject utilities such as South Eastern to conflicting commands from our courts and the IURC regarding a utility's duty to notify customers when service is unexpectedly interrupted. The effect is to disrupt the desired goals of uniformity and consistency in the IURC's regulatory framework.

The majority's conclusion that the trial court has jurisdiction to decide the reasonableness of South Eastern's failure to provide the Ingrams with notice enables the

intentional interruption in service in advance of

that interruption).

court "to substitute its judgment for the agency's ... on the reasonableness of any [utility] practice." *Nader,* 426 U.S. at 299–300, 96 S.Ct. at 1985, 48 L.Ed.2d at 652. The Ingrams are dissatisfied with existing administrative rules which do not require notice when unexpected interruptions in gas service occur. The reasonableness of those rules is a matter within the IURC's primary jurisdiction. *See Massa,* 698 F.Supp. at 1451.

I cannot agree that in this instance the holding in *Nichols* is dispositive. In *Nichols,* we considered whether the IURC had jurisdiction over an action in which a dairy herd was injured by stray voltage from a power company's lines and concluded that a plaintiff raising a common law negligence claim need not first seek relief from the Commission. *Nichols,* 494 N.E.2d at 354. However, as we noted in *Nichols,* "the issues presented by the Nichols' claim only remotely dealt with questions of adequate service as contemplated by IND.CODE 8–1–2–54. There was no question that service was provided, it was at an adequate level and quantity and the rates were appropriate." *Id.* Instead, *Nichols* involved the utility's failure to warn its customers of the potential for a stray voltage problem and its placement of an unsafe product in the stream of commerce, questions which are governed by traditional concepts of negligence and strict liability. *Id.* Here, the Ingrams contend that South Eastern failed to provide adequate service in that South Eastern had the duty to take whatever steps were necessary both to restore adequate service and to warn its customers of the interruption in service to prevent damage to life and property. *See* Appellees' Brief at 1 and 8.

The majority finds further support in the principle from *Nichols* that the trial court has original subject matter jurisdiction over the Ingrams' action because the IURC cannot afford them complete relief. *See Nichols,* 494 N.E.2d at 353. The majority contends that to require the Ingrams to seek relief from the IURC would be futile because the IURC can exercise only administrative or legislative powers, has no judicial

powers and cannot award the Ingrams a money judgment. *See id.* However, when we have previously applied the doctrine of primary jurisdiction, we have declared that a claim for damages cannot circumvent the IURC's primary jurisdiction to pass upon a specific utility practice. In *Indiana Bell Telephone Co. v. Friedland* (1978), 175 Ind.App. 622, 373 N.E.2d 344, *trans. denied, cert. denied,* 440 U.S. 916, 99 S.Ct. 1233, 59 L.Ed.2d 465 we held that even though the Public Service Commission, IURC's predecessor, had no authority to render a money judgment, before a plaintiff can bring a claim for damages, the Commission must have first determined that the conduct or acts which gave rise to the complaint were "unlawful." *See id.* 175 Ind.App. at 635, 373 N.E.2d at 352. The proper procedure for attacks against the practices and services of a public utility is first to seek a determination from the Commission whether those practices and services are adequate before instituting an action in the trial court for damages. *Id.* Judicial review of that determination may be obtained as provided in Indiana Code § 8–1–3–1. *Id.*

The Ingrams cannot divest the IURC of its statutory jurisdiction and the intended procedure for obtaining relief merely by claiming money damages. The Ingrams' claim challenges the adequacy of South Eastern's utility service and the reasonableness of an IURC rule or practice. Accordingly, the Ingrams' complaint must yield to the IURC's primary jurisdiction.

### *Failure to State a Claim*

I dissent for a second reason. If, as the majority holds, the trial court had subject matter jurisdiction, then South Eastern was entitled to judgment on its motion to dismiss for failure to state a claim because South Eastern had no duty to warn as a matter of law. *See* Ind.Trial Rule 12(B)(6). In a negligence action, whether a duty exists is a question of law. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995. Among the relevant considerations in making that determination are the relationship between the parties, the reasonable foreseeability of

harm to the person injured, and public policy concerns. *Id.* The question whether the law imposes a duty begins with an analysis of the relationship between the parties. *Id.*

Here, the relationship is a contractual relationship between a public utility and its customer. The customer is entitled to adequate service, as defined and administered by the IURC under rules and regulations which have the effect of law. *See Whitley County Rural Electric Membership Corp. v. Lippincott* (1986), Ind.App., 493 N.E.2d 1323, 1327. Nevertheless, even where service is adequate, unexpected interruptions in utility service occur from time to time without warning and are usually caused by equipment failure or adverse weather conditions. While improvements in technology have reduced the frequency and duration of such interruptions, occasional interruptions are inherent in utility service, and customers expect them.

When such interruptions occur they often affect thousands of customers. As a practical matter, customers usually have actual, often immediate, knowledge that an interruption in utility service has occurred, and in such cases notice is obviously not required. This case presents a more narrow question, namely, whether a public utility has a duty to warn those customers who might not know or have the means at hand to learn promptly that an interruption in service has occurred.

The Ingrams' claim presupposes that South Eastern had a duty to warn and assumes, as a matter of law, that the customer's interest in having uninterrupted utility service is entitled to protection against the utility's conduct in not warning the customer of an unexpected interruption in service. *See Gariup Construction Co. v. Foster* (1988), Ind., 519 N.E.2d 1224, 1227. However, customers do not have a legitimate expectation that utilities will notify them under these circumstances. I do

not believe that reasonable persons would recognize or agree that a duty to warn exists or that a utility should bear the loss for each of its customers arising from a failure to warn. *See id.*

Apart from the common law, whether and when a utility has a duty to warn its customers is controlled by administrative rule. I do not find, and neither the parties nor the majority have directed me to, any notice requirement in any applicable statute or IURC rule.[4] To the contrary, the IURC has determined as a matter of law, by rule, that utility service is adequate when, as in this case, a reduction in gas pressure exceeding allowable variations is due to conditions beyond the control of the utility. *See* 170 IAC 5-1-21(B). An IURC rule issued pursuant to a legislative grant of authority to regulate the provision of utility service has the effect of law. *See Lippincott,* 493 N.E.2d at 1327 (applying principle to administrative rule promulgated by the Public Service Commission, IURC's predecessor). That grant of authority to the IURC is exclusive, and a trial court cannot create new or different rules or standards requiring notice, where the IURC has already determined by rule that service is adequate and that a utility is not responsible for variations in gas pressure due to conditions beyond its control. *See id.* The IURC rule is not mere evidence but is controlling. *See id.*

As previously noted, the Ingrams did not allege in their complaint that the interruption in utility service was caused by any act or omission of South Eastern, and both parties agree that is not an issue. *See* Record at 4; Appellant's Brief at 3 and Appellees' Brief at 1 at 2. Given IURC rules in effect at the time the Ingrams experienced a reduction in gas pressure, South Eastern had no duty as a matter of law to give the Ingrams notice of the inter-

---

**4.** In contrast, Indiana Code § 8-1-2-122 requires notice of termination of residential electric or gas service, and Indiana Administrative Code, title 170, rule 4-1-23 (1992), requires notice of planned interruptions of electric utility service. The single IURC rule addressing inter-

ruption of gas service only requires utilities to maintain records and file reports of such interruptions. *See* IND.ADMIN.CODE tit. 170, r. 5-1-23 (1992). There are no IURC rules which require notice to gas utility customers of *unintentional* interruptions of service.

ruption in order to furnish reasonably adequate service.

Whether we apply a common law or administrative law analysis, there is no legal duty to warn. In the absence of a legal duty the Ingrams have failed to state a claim.

### Conclusion

In sum, I believe that South Eastern was entitled to judgment as a matter of law because the trial court lacked subject matter jurisdiction. Further, the Ingrams failed to state a claim upon which relief could be granted. Under either theory, South Eastern's motion for a judgment on the pleadings should have been granted.